# JOHN S. MILLMAN v. DRAKE & STRATTON COMPANY and Another.[1]

July 26, 1912.

Nos. 17,709—(203).

**Verdict against both defendants sustained by evidence.**

Evidence in an action by an employee of a mining company against such company and a coemployee of the plaintiff for injuries sustained by the plaintiff from being thrown from a "dinky" engine while firing the same *held* sufficient to sustain the finding of the jury, involved in their general verdict in favor of the plaintiff, that both of the defendants were guilty of negligence.

**Questions for jury.**

Whether, in such action, the plaintiff was guilty of contributory negligence or assumed the risk of the injury which he received, *held*, under the evidence, for the jury.

**Charge to jury — refusal of request.**

Where, in such action, the general instructions clearly, fully, and correctly stated the rules of law applicable to the facts proven, so far as the defendants were concerned, there was no error in the action of the trial court in refusing an instruction requested by the defendants as to what would not constitute negligence of the plaintiff's coemployee in running the engine, as engineer thereof, from which the plaintiff was thrown.

**Same.**

Such requested instruction *held* properly refused, as being inaccurate, ambiguous, and misleading.

**New trial — false testimony.**

The fact that a witness called by the plaintiff wilfully gave false testimony on the trial to the prejudice of the defendants' interests, and in favor of the plaintiff's claims upon the vital questions involved, did not require the granting of the defendants' motion for a new trial, where it did not appear that the plaintiff was in any way responsible for or implicated in the giving of such false testimony, except that he produced the witness, and where the trial court fully granted the defendants' request for instructions concerning such witness and his testimony, which testimony, furthermore, was known by the defendants on the trial to be false, and was contradicted by witnesses produced by the defendants for that purpose.

[1] Reported in 137 N. W. 300.

Action in the district court for St. Louis county against Drake & Stratton Company and Vern Lovdahl to recover $40,000 for personal injuries. The complaint alleged that defendant company was negligent in maintaining its tail track in the condition stated, and both defendants were negligent in operating the train at an unsafe rate of speed, and in excess of the usual speed, at the point where the accident occurred. The case was tried before Hughes, J., and a jury which returned a verdict in favor of plaintiff for $14,940. From an order denying defendants' alternative motion for judgment notwithstanding the verdict or for a new trial, they appealed. Affirmed.

*Spencer & Marshall,* for appellants.

*Samuel A. Anderson* and *W. E. Whipple,* for respondent.

PHILIP E. BROWN, J.

Action to recover damages for personal injuries. The defendant the Drake & Stratton Company on May 19, 1910, and for a long time prior thereto, was engaged in removing earth from over a body of iron ore of the Dale-Uno mine, situated near Hibbing. Two steam shovels, each located on a separate track, were used to remove the overburden, and it was loaded into the usual dump cars, which were about fourteen feet in length. In the process of excavating a pit of considerable size and depth had been made, in the bottom of which the steam shovels were located and alongside of these were temporary dump car tracks. Two small narrow-gauge tram tracks ran in an easterly and westerly direction from the shovels, extending westerly out of the pit and merging into one track at a point where the first of the two switches hereinafter mentioned was located, some one hundred feet or more east of the second switch which led to what will be referred to as the tail track; the last switch mentioned being the one which lined up for the trains to pass from the tail track east to the dump track and to the dump. The tail track referred to was about four hundred fifty feet in length, and had been in use about one month. Six trains, of nine cars each and drawn by a single engine, were operated over these tracks on each shift.

Small engines, called "dinkies" and weighing about twenty tons each and equipped with steam jam brakes, were used to haul the

trains out of the pit and to the dump. These engines had no tender,. and the coal and water required for their use was carried, respectively, in a box attached to the side of the cab and on the top thereof in a saddle. The engineer sat on the right side and the rear of the cab, which the engineer and fireman both occupied, and the same was open and unprotected either by guard or railing to prevent them from falling from the rear end. The coupler on the rear of the engine was in the center, substantially on a level with the floor of the cab, and extended out about one foot, and there was a board about ten inches wide above the coupler, forming practically an extension of the cab floor. The coupling pin extended through this board over the coupler and through the coupler; the head of the pin being left extended about one inch above the board. The opening into the cab was in the rear, over the coupler, and the boiler head was directly in front of the opening, leaving a space in the cab back of the boiler head of about thirty inches. To fire the engine when in motion, it was necessary, while in the act of shoveling coal into the fire box, to stand with one foot on the cab floor against the boiler head and the other foot out on the board over the coupler and backed against the head of the coupling pin.

The track leading from the pit was first on an upgrade for some distance, then on a downgrade, and then on an upgrade which extended to the first switch. This space between the two switches, and also the tail track, was nearly level.

On May 19, 1910, the plaintiff was employed by the defendant. company as a brakeman and fireman on one of the trains mentioned,. and at the time in question was working on the night shift. He was thirty-eight years old, and had been employed by the said company in this class of work for several years. Between nine and ten o'clock in the evening of the day mentioned, the plaintiff was working on one of such defendant's trains in the said capacity, which was propelled by engine No. 114; such engine being in charge of the defendant Vern Lovdahl as engineer. The train had been loaded at one of the steam shovels, and the engine which was attached to the forward end of the train, head end to, started to back out towards the tail track, pulling the cars after it. While ascending the first grade after:

leaving the shovel the train stalled twice, and it became necessary to run forward toward the shovel in order to regain sufficient momentum to surmount the grade. On the third trial the train passed up and over this grade and the other portion of the track, descended past the two switches, and, when it reached a point some forty or fifty feet beyond the second switch and on the tail track, the plaintiff was either thrown or fell from the engine, and sustained serious injuries, for which he sought recovery in this action.

Before leaving the shovel, the engineer, Lovdahl, put coal into the fire box, and as the engine backed away from the shovel towards the first switch the plaintiff sat upon the coal box in the cab of the engine. All of the defendant's tracks were laid on the surface of the ground, without ballast, and the plaintiff was familiar with their construction and condition. The plaintiff claims, and offered evidence tending to show, that the engineer was angry after surmounting the first grade, and continued to run the train rapidly; that, when the engine came within about a car's length of the first switch, he, the plaintiff, got down, and put a scoop of coal into the fire box, standing, for this purpose, in the usual position when firing, and that he was temporarily blinded by the fire, so that he could not see and did not know when the engine ran over the second switch; that after it had passed this switch, and unknown to the plaintiff, while the engine was running ten miles an hour and when the plaintiff was about to throw another shovel full of coal upon the fire, the engine lurched and jumped up and down from one side to the other, twice as much as it had ever done before while he was thereon, and he was thrown out at the place above indicated.

There was also evidence tending to show that it was the custom and practice and his custom to fire on the way from the shovel to the tail track, and on the tail track and at any place and whenever fire was needed; that the train was operated over the grade on the said third trial and on the night mentioned at a speed of ten or twelve miles an hour, such being the usual rate of speed up to a point between the switches, but that it was customary to slow down the train between the two switches so as to pass over the last one and on to the tail track at no greater speed than four miles an hour; that the

tail track was very rough, and that the track running from the shovel to the switch was in good shape; that there was no trouble in firing in the position which the plaintiff occupied, while coming out from the shovel to the switch, when running at a speed of ten miles an hour, and that he had frequently, and without difficulty, fired on the engine with the train moving on the tail track at a speed from three to four miles an hour, but that he had never fired on the tail track when the engine was running as fast as it was on the night in question; that at the point where he was thrown from the engine on the tail track there was a low place or sag in the track, so that, when the engine ran over this place, one side of the engine would drop down, thus making the track rougher and uneven, and that, in order to run over this place with reasonable safety, it was necessary to reduce the speed to three or four miles an hour; and that such was the customary rate of speed in passing over such place.

The plaintiff's ultimate claim is the same as that alleged in the complaint, namely, that the defendant company was negligent in maintaining its tail track in the condition stated, and that the defendants were negligent in operating the train described over the tail track where the accident occurred at an unsafe rate of speed and greatly in excess of the customary and usual rate at that point, and that the negligence of the defendants as stated constituted the proximate cause of the injuries complained of.

The defendants allege in their answer, maintained on the trial, and offered evidence tending to show that neither of them was negligent in the respects claimed by the plaintiff, or otherwise; that the track upon which the plaintiff was riding immediately prior to receiving the injury was the ordinary, usual, and customary track commonly used for such purposes and in the same condition as other tracks upon and about the said earth-stripping operation; that at the time the plaintiff was injured the engine upon which he was riding was the usual and customary engine used upon the said work, and with which the plaintiff was thoroughly familiar; that it was being operated at the usual and customary rate of speed over a track that was similar in all respects to other tracks upon the work, and the usual and customary track provided and used generally for such

purposes; and also that the plaintiff's injuries were the result of his own carelessness, negligence, and lack of attention to his duties, or were the result of a risk or danger incident to the business in which he was engaged, all of which were open, known to, understood, and appreciated and voluntarily assumed by him.

The cause was tried to a jury, and the plaintiff had a verdict against both of the defendants; the jury also finding that the plaintiff's injury was caused by the negligence of the defendant Lovdahl. This is an appeal from an order denying the defendants' motion for judgment notwithstanding the verdict or for a new trial.

The court charged that, to entitle the plaintiff to a recovery, both grounds of negligence claimed by the plaintiff to have existed must in fact have existed at the time of the plaintiff's injury; that is, that there must have been a depression in the tail track due to negligence, and that the train, at the time in question, was run at a negligent rate of speed, and that if they so found, and also that the negligence of the defendants was the proximate cause of the plaintiff's injuries, the plaintiff should recover, unless he assumed the risks resulting in such injuries or was guilty of negligence proximately contributing thereto.

1. No direct claim was made here by the defendants that the evidence was insufficient to sustain the finding of the jury embraced in the general verdict returned, to the effect that both of the defendants were negligent as charged and within the instructions given by the court, and we are of the opinion, after an examination of the record, that such a contention could not be sustained.

2. The defendants urgently maintain that they were entitled to a directed verdict because it appeared that the plaintiff was guilty of contributory negligence, and also that the injuries he sustained were the result of the ordinary risks of the occupation, the dangers whereof were open, obvious, and familiar to him, and hence were assumed when he continued in the employment of the defendant company. The defendants had the burden of establishing these defenses on the trial, and to sustain either contention would require a holding that the facts upon which it depended were conclusively established by the evidence.

119 M.—9.

As to the alleged contributory negligence, it is not feasible or neces-
sary to discuss the evidence, which covers more than one thousand
printed pages, at length.  If the plaintiff's testimony was true, which
was for the jury to determine in the first instance, then it fairly ap-
pears that he did nothing unusual shortly before the accident know-
ingly to jeopardize his safety, and omitted nothing in his work which
it was usual or customary to do in the performance thereof with the
appliances furnished him by the defendant company.  On this issue
it was proper to consider that he was justified in acting within rea-
sonable limits on the assumption that the engineer would use his
accustomed care in driving the engine.  We hold that fair-minded
men might reasonably draw a different conclusion in this regard
from the proofs than the one deduced by the defendants, and, fur-
ther, that the question was for the jury.  We also reach the latter
conclusion upon the question of assumption of risk.

3. The defendants assert, in support of their claim that the court
erred in denying their motion for a new trial, that a witness called
by the plaintiff wilfully gave false testimony upon the trial, to the
great prejudice of the defendants' interests, and in favor of the plain-
tiff's claims concerning the vital questions involved.  This point was
presented to the trial court, upon the defendants' application for a
new trial, solely upon the testimony given by this and other witnesses
on the trial.  No suggestion appears that the plaintiff was in any
way responsible for or implicated in the giving of this testimony
except in so far as the witness was produced by him.  It appears that
the defendants knew that this testimony was false when it was given,
and witnesses were produced by them who contradicted it on the
trial, and, further, that the defendants requested the court to instruct
the jury particularly concerning this witness and his testimony,
which request was fully complied with.  We have no hesitation
in disposing of this point adversely to the defendants, for the falsity
of the testimony was so clearly established that no one possessed of
half average intelligence could have been deceived thereby, and,
further, for the reason that the trial judge, who had a much bet-
ter opportunity to judge whether the jury were misled than we have,
denied the defendants a new trial.  In jury trials an occurrence

of this kind would usually, if not always, militate against the interests of the party producing such a witness. The proposition that a party to an action calling a witness for examination in chief is responsible or vouches for his veracity is true to a very limited extent. Selover v. Bryant, 54 Minn. 434, 56 N. W. 58, 21 L.R.A. 418, 40 Am. St. 349.

The defendants finally complain because the court refused to give this one of their sixteen requested instructions: "If the jury find from the evidence that the plaintiff had not been accustomed prior to the time of the accident to put in a fire backing up or to be off his seat in the engine while they were backing up from the steam shovels, and that the engineer did not know that the plaintiff was doing anything out of the ordinary, at the time in question, it would not be negligent for the engineer to run the engine and train at any speed that would not cause any danger of derailment of the engine or cars." There was no error in refusing to give this instruction. The general instructions clearly, fully and correctly stated the rules of law applicable to the facts proven, so far as the defendants were concerned. This branch of the case is governed by the rule stated in Senro v. Chicago & N. W. Ry. Co. 115 Minn. 110, 131 N. W. 1011, as follows:

"The court is not required to instruct the jury as to the effect of particular items of evidence, or what conclusions may or may not follow therefrom * * * when the law of the case is fully stated in the general charge."

But, this aside, the instruction requested was inaccurate and ambiguous. Running an engine "at any speed that would not cause any danger of derailment" is not a proper test of ordinary care. Moreover, the jury might have inferred from the phrase "anything out of the ordinary," as used, that the court intended to convey the idea that the plaintiff was doing an improper act at the time indicated.

Order affirmed.