JULIA OUTCELT, AS ADMINISTRATRIX OF THE ESTATE OF CLARENCE R. OUTCELT, DECEASED v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY AND WALKER D. HINES, DIRECTOR GENERAL OF RAILROADS, AND JOHN BARTON PAYNE, GOVERNMENT AGENT.[1]

December 2, 1921.

Nos. 22,430, 22,431.

**Death — proof of cause by circumstantial evidence.**

1. In a death case the causal connection between the negligence charged and the injury suffered may be established by circumstantial evidence.  It was so established in this case.

**Assumption of risk by servant — question for jury.**

2. To be charged with the assumption of a risk, it is not enough to show that a servant was aware of the existence of a defect or danger. He must also have actually or constructively known and appreciated the risks to which he was exposed.  The evidence made the question one of fact for the jury.

**When servant is negligent in selecting dangerous way in which to work.**

3. As a general rule, when a danger is obvious and of such a nature that it can be appreciated and a servant is permitted to do his work in his own way, he is negligent as a matter of law if he selects a dangerous way when a safe one is available and he has knowledge, actual or constructive, that the way he selects is dangerous.  The evidence did not bring this case within the rule.

**New trial — failure to instruct jury in absence of request.**

4. The failure of the trial court to instruct on a particular point is not ground for a new trial in the absence of a request for an instruction covering it.

[1] Reported in 185 N. W. 495.

**Railroad — government agent sole defendant.**

 5. The action should have been dismissed as to the railroad company and the director general, and only the government agent under the transportation act retained as defendant.

Action in the district court for Ramsey county to recover $25,000 for the death of plaintiff's intestate. The answer alleged that all the physical conditions surrounding and attendant upon the work being done by plaintiff's intestate at the time of the accident were patent and observable and known to and understood by the deceased. The case was tried before Haupt, J., who at the close of the testimony denied defendant's motion for a directed verdict and a jury which returned a verdict in favor of plaintiff apportioned as set out in the first paragraph of the opinion. From an order denying their motion for judgment notwithstanding the verdict or for a new trial, the railroad company and director general appealed. From an order denying his motion for judgment notwithstanding the verdict or for a new trial, John Barton Payne, Government Agent, appealed. Affirmed on appeal of government agent and reversed on appeal of railroad company and director general.

 *Barrows & Metcalf,* for appellants.
 *Barton & Kinkead,* for respondent.

LEES, C.

Plaintiff's intestate was the head brakeman on a freight train of the Chicago, Burlington & Quincy Railroad Company. He lost his life in an accident in the railroad yards at Grand Crossing, Wisconsin, on the evening of January 10, 1920. Alleging that the deceased was employed in interstate commerce, plaintiff, who is his widow and administratrix, brought this action to recover the pecuniary loss she and her two children sustained by reason of his death. She recovered a verdict against all of the defendants, apportioning damages as follows: $13,000 to the widow and $1,000 to each of the children. The railroad company and the director general joined in a motion for a judgment of dismissal

notwithstanding the verdict or for a new trial, basing their motion on the proposition that only the agent designated by the president under the Transportation Act of February, 1920, could be held to respond in damages. The motion was denied and they appealed. The agent who is referred to in the pleadings as government agent moved in the alternative for judgment notwithstanding the verdict or for a new trial. The motion was also denied and he appealed. Both appeals were heard and submitted at the same time. We dispose of the appeal of the government agent first.

The end of the run of the train on which the deceased worked was at Grand Crossing. In the yard where it was to be placed for the night, there were 12 sidetracks. The train, consisting of 17 cars, was to be left on track No. 5. The engine stopped near the switch connecting this track with the lead track, and the deceased got out of the engine cab where he had been riding, threw the switch and gave the signal to come ahead. The fireman testified that when, in response to the signal, the engine came up to the switch he saw the deceased standing beside it and that he was still there when the engine had run about three car-lengths in on track No. 5. Deceased was not again seen alive. It was the duty of the head brakeman to receive a signal from the rear of the train when it had passed in on the sidetrack far enough to be in the clear and to uncouple the engine so it might be run into the roundhouse. The signal could be received by a brakeman stationed on top of a freight car or in the gangway between the engine and tender, and possibly from the side of a car or of the tender. On the night of the accident it was received by the engineer, for the deceased was not on the train when it was brought to a stop.

Soon after the train was left on track No. 5, two inspectors proceeded to examine the cars, beginning at the end of the train nearest the switch and proceeding north on opposite sides of the track. Track No. 6 was west of and adjacent to track 5. A refrigerator car stood on this track 600 or 700 feet north of the switch to track 5. When the inspector on the west side of the track came to a point opposite the refrigerator car, he discovered a cap lying on the ground. A few feet farther

north he found a lantern, and a little farther on the body of the deceased. There were indications in the snow between the tracks and where the cap and lantern were found that someone had fallen to the ground, and from there to the place where the body lay there were marks indicating that some object had been dragged in the snow. The body lay between tracks 5 and 6 and about five car-lengths from the front car in the train. It lay face down with the head to the north and the feet to the south. The coat worn by deceased had been pulled up over his head. There was blood on the west rail of track 5 near where the cap was found and also on a wheel of the front truck of the car to which the engine had been attached, and a small piece of bone was found on the truck. At the rear of the tender there was a step or stirrup on either side and horizontal handholds. The complaint was drawn and the case tried on the theory that the deceased was riding on the stirrup on the west side of the tender when it passed the car on track 6 and was brushed off because there was not sufficient clearance.

The sidetracks in the Grand Crossing yards were constructed about 17 years ago. They were so laid that, measuring from center to center of adjoining tracks, the space would be 12 feet. The space between tracks 5 and 6, at the place where the refrigerator car stood, was 11 feet 10½ inches. The space between all the sidetracks varied, running from a maximum of 12 feet 9 inches down to a minimum of 11 feet 9¾ inches, and except for one other place the tracks were nearer together where the refrigerator car stood than anywhere else in the yard. This car extended out over the rails on either side 29 inches, and the tender of the engine 27½ inches, leaving a clearance of only 25 inches between the car and the tender.

It appeared that the deceased was an experienced brakeman and had run in and out of the yard many times. It is conceded that the tracks were so spaced that the deceased could not safely ride on the side of the tender if a car chanced to be standing on an adjoining track. Appellants' contentions are: (1) That the evidence does not show that deceased was riding on the tender at the time of the accident; (2) that he had ample opportunities to see how the tracks were located and knew, or was bound to know, that it was dangerous to ride on the side of an

engine moving about the yard; that there was no occasion for his rid-ing there, and, if he did, he assumed the risks incident thereto.

1. We find in the record sufficient evidence to justify the jury in find-ing that the deceased was riding on the side of the tender and was knocked off by the car on track 6. Plaintiff might establish her case by circumstantial evidence tending to show a causal connection between the negligence charged and the injury suffered. McNamee v. Hines, supra, page 97, 184 N. W. 675; 2 Dunnell, Minn. Dig. § 7047. The location of the cap, lantern and body, and the blood on the west rail of track 5 and on the front wheel of the car next to the engine, are persuasive evidence that the accident happened in the manner alleged in the complaint. We think the fireman's testimony, already referred to, did not demolish the foundation on which the case rests or overcome the silent testimony of the physical facts.

2. The main contention is that, if the deceased voluntarily selected the side of the tender as the place where he would ride, he assumed all the risks incident to the insufficient clearance between tracks 5 and 6. In Scharenbroich v. St. Cloud F.-W. Co. 59 Minn. 116, 60 N. W. 1093, it was said that the doctrine of assumption of risks is not favored by the courts and ought to be cautiously applied, but, since the question is ordinarily left to the jury, there is little danger of the doctrine being harshly applied against the plaintiff, especially where the defendant happens to be a corporation. By the Federal Employer's Liability Act, as well as by our own, a portion of the doctrine has been pared away, but the facts in this case were such that assumption of risk might still be interposed as a defense.

It is uniformly held that a servant is not charged with the assumption of a risk merely because he is aware of the existence of a danger or defect. To be so charged, he must have known or appreciated, or, in the exercise of ordinary prudence, should have known and appreciated the risks to which he was exposed. Falkenberg v. Bazille & Partridge, 124 Minn. 19, 144 N. W. 431; 2 Dunnell, Minn. Dig. § 5970. Whether a servant assumed a given risk, is a question for the jury, unless the evidence is conclusive. 2 Dunnell, Minn. Dig. § 5998. It is urged

that in the instant case it was conclusive, but we are unable to concur in that contention.

It may be conceded that the location of the sidetracks and the space between them must have been perfectly obvious to anyone, and that the deceased, who had run in and out of the yard so many times, must have observed their location and must have known that cars might be standing on any of them at any time. That, however, is not enough to establish conclusively that he had actual or constructive knowledge that it was dangerous to ride on the side of the tender as the engine was running in on one of the tracks. Plaintiff showed by a number of witnesses that in the Grand Crossing yard it was customary for brakemen to ride on the side of the tender or of cars. The yard had been in use for many years. So far as the record shows, the spacing between the tracks had never been changed. It does not appear that there ever had been a similar accident in the yard. If it was customary for brakemen to do what the deceased did on the evening in question, it is fair to assume that the danger of injury was not open and obvious to experienced brakemen, for it is not probable that, with knowledge of the risks they ran, they would follow a practice which endangered their lives. Undoubtedly the danger was ever present, but we think it was a hidden one and that its existence would not be apparent to a man of ordinary prudence, even though he had the experience and opportunities for observation which were possessed by the deceased. The deceased had the right to assume that the railroad company had used due care to provide a reasonably safe place for the doing of his work. The fact that tracks 5 and 6 were so near together that it was dangerous to ride where he rode, was not so patent as to be readily observable, and hence it was for the jury to determine whether he had assumed the risk of the injury which caused his death. Clay v. Chicago, M. & St. P. Ry. Co. 104 Minn. 1, 115 N. W. 949; Koller v. Chicago, St. P. M. & O. Ry. Co. 113 Minn. 173, 129 N. W. 220; McDonald v. Railway Transfer Co. 121 Minn. 273, 141 N. W. 177.

3. But it is contended that, in the discharge of his duties, the deceased was not required to ride on the side of the engine or cars, that there was no necessity for his doing so, and that he voluntarily and un-

necessarily took a position of danger when one of safety was reasonably available, and hence there can be no recovery. The general rule is that, when a danger is obvious and of such a nature that it can be appreciated and a servant is permitted to do his work in his own way, he is negligent as a matter of law if he selects a dangerous way when a safe one is available and he has knowledge, actual or constructive that the way he selects is dangerous. Labatt, Master & Servant (2d ed.) p. 3433; Hoveland v. Chicago, R. I. & Pac. Ry. Co. 110 Minn. 329, 125 N. W. 266; Popplar v. Minneapolis, St. P. & S. S. M. Ry. Co. 121 Minn. 413, 141 N. W. 798, Ann. Cas. 1914D, 383.

This rule apparently relates to the subject of contributory negligence, 2 Dunnell, Minn. Dig. § 6008, and contributory negligence does not bar a recovery in an action brought under the Federal Employer's Liability Act; it merely diminishes damages. The distinctions between contributory negligence and assumption of risks are pointed out in Rase v. Minneapolis, St. P. & S. S. M. Ry. Co. 107 Minn. 260, 120 N. W. 360, 21 L.R.A.(N.S.) 138, and Casey v. Illinois Central R. Co. 134 Minn. 109, 158 N. W. 812. There is much confusion on the subject. It has been well said that attempted distinctions are metaphysical and not practical. 18 R. C. L. p. 674.

Granting that the voluntary selection of a dangerous way of doing work when there is a safe way of doing it, is to be classed as an assumption of the incidental risks, and hence is available as a defense in this action, it must appear that the dangerous way was selected with knowledge, actual or constructive, that it was dangerous. For reasons already stated, whether the deceased had such knowledge was a question for the jury. If there was a rule in force in the Grand Crossing yard, prohibiting brakemen from riding on the side of an engine or car, a different conclusion might be possible, but, on searching the record, we have found no such rule.

4. The final contention is that the trial court erroneously failed to instruct the jury that plaintiff must show that the negligence charged was the proximate cause of her husband's death. The charge might have been more definite in this respect, but a more specific instruction was not requested. It is well settled that the failure of the court to

charge on a particular point is not ground for a new trial in the absence of a request for an instruction covering it. State v. Sailor, 130 Minn. 84, 153 N. W. 271; Clapp v. Minneapolis & St. L. Ry. Co. 33 Minn. 22, 21 N. W. 844; 2 Dunnell, Minn. Dig. § 7179. Three exceptions were taken to the charge. As we read them, they did not amount to a request for an instruction on the point under consideration and did not apprise the court of the alleged omission in the charge.

5. The motion of the railroad company and of the director general was denied before the Supreme Court of the United States decided the case of Missouri Pac. R. Co. v. Ault, 256 U. S. 554, 41 Sup. Ct. 593, 65 L. ed. 647. Under the rulings of this court up to that time, the order of the trial court was correct, but in Borsheim v. Great Northern Ry. Co. 149 Minn. 210, 183 N. W. 519, and, in obedience to the rule announced in the Ault case, prior decisions, holding that a railroad company was a proper party to an action for damages sustained while the railroads were under government control, were overruled. When this action was brought the director general had been succeeded by the agent designated by the president. It would seem, therefore, that the agent was the only proper party defendant, and that both the director general and the railroad company had a right to have the action dismissed. These are purely formal matters not going to the merits of the action or to the ultimate liability of the United States under the provision of the transportation act. Miner v. Payne supra, page 103, 184 N. W. 673. We think the proper practice, in view of the existing situation, is to reverse the order from which these two defendants appealed and to remand the case with directions to enter an order of dismissal as to the railroad company and the director general, and it is so ordered. The motion of the government agent for a new trial was properly denied and that order is affirmed.