# BENEDICT SCHNEIDER v. THE TEXAS COMPANY AND ANOTHER.[1]

March 11, 1955.

No. 36,374.

---

[1]Reported in 69 N. W. (2d) 329.

132

*Thomas J. Spence* and *Kenneth W. Green*, for appellants.
*James E. Finley*, for respondent.

CHRISTIANSON, JUSTICE.

Action is brought by plaintiff to recover damages for personal injuries he sustained as a result of the alleged negligence of defendant George R. Gilbert while acting as an agent and employee of defendant The Texas Company. The jury returned a verdict for plaintiff against both defendants, and defendants appeal from the order of the trial court denying their alternative motion for judgment notwithstanding the verdict or for a new trial.

Plaintiff had been employed as a truck driver by the Advance Express Company, a common carrier of freight, for approximately three years. On October 10, 1949, he was assigned by his employer to deliver certain freight to various consignees in the Twin Cities including defendant The Texas Company. The Texas Company is engaged in the retail and wholesale vending of petroleum products and the operation of filling stations and maintains a freight receiv-

ing yard on Pelham boulevard in the city of St. Paul. Plaintiff arrived at The Texas Company's freight yard at approximately noon, and after waiting an hour, he entered the freight yard through a Pelham boulevard gate. It was the first time that he had delivered freight of the nature involved to The Texas Company. Plaintiff operated a 1947 International truck cab and 1947 Trailermobile van owned by the Advance Express Company. The interior of the van was 27¾ feet in length by 7 feet 4 inches in width, and the bed of the van was 4 feet above ground level. On the rear end of the van a metal flange projected 4 inches inward from each side upon which laterally opening doors were hinged. The rear edge of the van bed was covered with metal which formed a level surface with the wooden floor.

At defendant Gilbert's instruction, plaintiff backed into the freight yard on an upgrade driveway, which rose four feet in elevation within a distance of 66 feet, and stopped his truck when the front end was two or three feet past the sidewalk. The ground immediately behind the truck continued to slope upward. After setting the brakes, plaintiff got out of the truck and blocked its wheels.

While plaintiff was attempting to secure the canvas top of the van, Gilbert asked him to help unload part of the freight which consisted of the pieces to two Globe automobile hoists. The hoists are used in filling stations to elevate cars which are to be greased or otherwise serviced. The day was very windy with gusts of 81 and 82 miles per hour occurring between 12:44 and 1:25 p. m. Among the pieces of the hoist were four steel runways which were 17 to 18 feet long, 14 to 16 inches wide, and had a four-inch perpendicular flange on each edge. The estimated weight of each runway was about 1,500 pounds according to plaintiff and 800 pounds according to Gilbert. Two of the runways leaned against each side of the van at a 45-degree angle while resting on their four-inch sides, and their ends were flush with the metal flange extending inward at the rear of the van. Due to the metal flange, it was necessary, before pulling the runways from the van, to pry them away from the side of the truck and plaintiff was asked to help in this task by defendant

Gilbert who supervised two other employees of The Texas Company in the unloading.

The work progressed in the following manner: Gilbert backed a Clark hoist, hereinafter called the "jeep," to the rear of the truck van. Another employee attached two 20-foot chains, which were joined together and fastened to the jeep, to the far end of a runway by means of a diamond-shaped hook. Plaintiff would then pry the runway away from the side of the van.[2] After finishing this task he would walk across the van and lean against the opposite side where he was able to observe the entire operation including all actions by Gilbert. Next, Gilbert would admonish the other workers "All right, everybody look out," and proceed to pull the runway straight forward with the jeep at a maximum speed of five miles per hour.[3] When all the slack was pulled from the chain it stretched approximately 35 to 36 feet from the back of the jeep to the far end of the runway. Gilbert would continue pulling the runway forward while watching over his shoulder, and when it became overbalanced, he would stop the jeep before the projecting end of the runway touched the ground. With its end resting on the ground, about a foot of the runway would remain on the rear edge of the van at approximately a 45-degree angle to the ground. The chain would be reattached to the end of the runway that was on the ground, and Gilbert would then drive the jeep forward and pull the runway entirely out of the van. After the chain was detached, Gilbert would move the runway to one side by the use of the fork lift equipment on the jeep. The entire operation took approximately ten minutes.

The first two runways which were situated on the driver's side of the van were removed in the above manner without incident. However, plaintiff testified that as Gilbert pulled the third runway

[2] On the first runway plaintiff was assisted by a Texas Company employee. However, this man stepped to the ground after the first runway was unloaded and he stayed there to readjust the chain after each runway had been partially removed.

[3] Defendant Gilbert testified that the top speed of the Clark hoist was three miles per hour. However, plaintiff testified that it operated at four to five miles per hour at the time of the accident.

with the jeep he failed to look over his shoulder and after the runway became overbalanced it slid so that the projecting end hit the slanting ground behind the van. Gilbert allegedly continued to pull on the chain and after approximately four feet of slack was removed therefrom, the projecting end dug into the ground and caused the rear end to pivot and strike plaintiff on the legs knocking him from the van to the ground.[4] Following the accident approximately one or two feet of the runway remained resting on the rear end of the van. The record does not disclose how the chain was attached to the runway other than that The Texas Company's employee "hooked it around the front end of the beam." During the removal of the third runway, plaintiff was not told that the operations would be different than before nor was he warned to get off the trailer or go to the front. However, plaintiff could easily have stepped to the ground or walked to the front of the van by way of the aisle created by the prior removal of the two runways on the left side of the van. Plaintiff also testified that as he lay on the ground Gilbert said to him "Oh, my God, oh, my God; it's my fault; it's my fault."[5] Plaintiff's principal injury consisted of a comminuted and compound fracture of his right leg.

Defendants contend that the trial court erred in denying their motions for a directed verdict and for judgment notwithstanding the verdict. They assert that plaintiff failed to prove any actionable

[4]Gilbert testified that the third runway was removed in the same manner as the previous two and that its projecting end never hit the ground. Defendants' only explanation for the accident, other than that it was unavoidable, was that the wind blew the runway into plaintiff. However, there is no testimony in the record that the runway was blown by gusts of wind or that the high winds had any direct causal connection with the happening of the accident. Furthermore, since the runways were pulled while flat on the floor of the van, the wind could have affected only the four-inch surface facing it, and the jury would have been amply justified in disregarding such a theory.

[5]Gilbert denied making such a statement and the two other Texas Company employees present testified that they had not heard Gilbert make it. However, the jury could have believed plaintiff and considered it as an admission on the part of Gilbert.

negligence on the part of Gilbert, and that, in any event, plaintiff assumed the risk or was contributorily negligent as a matter of law.

■ A motion for judgment notwithstanding the verdict, whether based on negligence, contributory negligence, or assumption of risk, accepts the view of the evidence most favorable to the verdict. Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213.

■ Defendants attack the veracity of plaintiff's version of the accident by pointing out alleged inconsistencies in his testimony. Plaintiff testified at the trial that the end of the runway hit the ground and swung toward him due to Gilbert's failure to stop the jeep, whereas in his pretrial deposition he testified on cross-examination as follows:

"Q. Now when the end of this third beam hit the ground tell us in your own words what happened?

"A. [By plaintiff] The third beam never did hit the ground."

However, the jury would have been justified in disregarding this variation in his testimony since later on in his deposition plaintiff indicated that he understood the foregoing question as referring to whether both ends of the runway fell completely off the truck after the accident. He was asked:

"Q. You said the beam didn't hit the ground before you were hit, isn't that correct?

"A. No. The beam hit the ground and I got hit already after it hit the ground."

Similarly, inconsistency is claimed in the difference between plaintiff's description of certain details of the accident at the trial and the statement in his pretrial deposition that he could not recall the same details at that time. However, none of the alleged inconsistencies in plaintiff's testimony is conclusive, and they were merely matters for the jury to consider in determining the weight and credibility to be given his testimony. See, Ryan v. Griffin, 241 Minn. 91, 97, 62 N. W. (2d) 504, 509; Cameron v. Evans, 241 Minn. 200, 204, 62 N. W. (2d) 793, 796.

Defendants also maintain that the evidence presented demonstrates as a matter of physical fact that the accident could not have

happened as plaintiff claimed. They assert that it was impossible for there to have been approximately four feet of slack in the chain when the end of the runway hit the ground, as plaintiff testified, if Gilbert had continued to pull on the runway after it overbalanced. However, conceivably, if not probably, the steel runway upon being overbalanced would tip and slide to the ground much faster than the jeep would move forward at its maximum speed of five miles per hour, and hence the chain would become slack. Defendants also claim that the runway would have fallen off the truck before swinging if Gilbert had continued to pull on the chain after the runway hit the ground. This argument is not compelling in light of plaintiff's testimony that the end of the runway dug into the dirt and thus caused the swinging to commence. Finally defendants contend that, based on plaintiff's post-accident estimate that the end of the runway projected one foot into the van when it hit the dirt, it would be impossible for the end to swing in an arc which would reach plaintiff who was standing about seven feet away on the other side of the van. At most, this fact could lead the jury to conclude that plaintiff was merely mistaken in his estimate of the footage remaining in the van since any claim that the runway could not have reached him is belied by the undisputed fact that it remained resting on the back edge of the van *after* having struck plaintiff.

From the evidence in the instant case the jury would have been justified in finding that Gilbert failed to look back and observe the position of the runway as he pulled it from the truck; that as a result of this omission, after the runway started sliding to the ground, its front end dug into the dirt and the other end struck plaintiff; and that in the exercise of reasonable care Gilbert should have anticipated the risk of injury to plaintiff and appreciated that to continue pulling on the runway after it hit the ground would cause the runway to pivot toward plaintiff. Moreover, the jury could have considered and given weight to Gilbert's alleged admission of fault immediately after the accident. In view of these facts and the other circumstances presented we cannot say that the want of negligence on the part of Gilbert in continuing to pull on the chain after the runway hit the ground is so clear as to leave no room for an honest

difference of opinion among reasonable men. Cf. Stritzke v. Chicago G. W. R. Co. 190 Minn. 323, 251 N. W. 532. Furthermore, once having found such negligence on Gilbert's part, the causal connection between pulling on the far end of a runway with the front end pivoted in slanting ground and the swinging of the runway to one side is sufficient basis for the jury's finding that his negligence was the proximate cause of plaintiff's injury. Thus we find that the trial court did not err in concluding that jury questions were presented on the issues of defendants' negligence and proximate cause.

■ We come now to defendants' contention that plaintiff assumed the risk or was guilty of contributory negligence as a matter of law. This court has recognized a distinction between contributory negligence and assumption of risk in that contributory negligence is based on carelessness while assumption of risk involves a comprehension that a peril is to be encountered and a willingness to encounter it.[6] Contributory negligence, like negligence, involves consideration of whether plaintiff's acts were those of an ordinarily prudent man under the same or similar circumstances. 13 Dunnell, Dig. (3 ed.) § 7012. It is the failure to use due care to avoid harm reasonably foreseen or anticipated. Aide v. Taylor, 214 Minn. 212, 219, 7 N. W. (2d) 757, 761, 145 A. L. R. 530.

In the instant case the jury could have found that plaintiff had never unloaded freight similar to the runways prior to the day of the accident and that he was unaware of the fact that the working procedure would be varied and pressure exerted on the chain after the third runway had touched the ground. When the permissible inference to be drawn from Gilbert's testimony that he did not consider the unloading of the runways dangerous work or warn plaintiff of any danger therein is combined with the consideration that plaintiff watched the removal of the first two runways from the left side of the van from a similar position on the right side of the van without threat to his safety, a finding that plaintiff could not have reasonably foreseen any risk of injury because of his position would be permissible under the evidence. The mere fact that plaintiff observed

[6]See, Schrader v. Kriesel, 232 Minn. 238, 45 N. W. (2d) 395; Zuercher v. Northern Jobbing Co. 243 Minn. 166, 66 N. W. (2d) 892.

that Gilbert was not watching the runway over his shoulder as in the removal of the first two runways and nevertheless failed to caution Gilbert or move to a safer location is not conclusive since plaintiff was not bound to anticipate that Gilbert would fail to exercise due care in his work and thus create a risk to plaintiff by continuing to pull on the chain after the runway touched the ground.[7] Moreover, a finding of negligence on plaintiff's part is not compelled by the mere existence of alternative locations in which it subsequently appears he could have stood and avoided injury. Outcelt v. Chicago, B. & Q. R. Co. 150 Minn. 398, 185 N. W. 495. Our inquiry must go only to his negligence in standing where he did as shown by the facts surrounding the accident indicating the foreseeability of the risks appurtenant to his actual position. Upon the evidence presented we cannot say that reasonable minds functioning judicially could not differ regarding whether plaintiff's conduct was that of an ordinarily prudent person under the same or similar circumstances. Furthermore, we cannot say as a matter of law that plaintiff comprehended, or reasonably ought to have comprehended, the peril of the runway swinging into him and that he willingly encountered it by maintaining the position he did. Stritzke v. Chicago G. W. R. Co. 190 Minn. 323, 251 N. W. 532; Outcelt v. Chicago, B. & Q. R. Co. *supra*. Thus we find that the trial court did not err in concluding that the issues of contributory negligence and assumption of risk were questions of fact for the jury.

■ We likewise find no prejudicial error in the trial court's failure to submit a separate instruction labeled "assumption of risk" to the jury. The court instructed the jury in this connection as follows:

"* * * Neither can a person recover damages against another if he voluntarily places himself in a known position of peril if a reasonably prudent person would not have done so under like circumstances."

---

[7]Kempfert v. Gas Traction Co. 120 Minn. 90, 139 N. W. 145; Millman v. Drake & Stratton Co. 119 Minn. 124, 137 N. W. 300; 11 Dunnell, Dig. (3 ed.) § 6004; 13 Dunnell, Dig. (3 ed.) § 7022.

and

"* * * Contributory negligence is simply negligence on the part of the injured party. He was required to exercise ordinary care for his own protection and he was required not to place himself unnecessarily in a position of peril and to keep a proper lookout for his own safety and to take those precautions which a reasonably prudent person would take under similar circumstances."

Although they fail to expressly include assumption of risk, we deem the foregoing instructions to have incorporated the doctrine since contributory negligence and assumption of risk are at most only theoretically distinguishable in this case. If the facts were present upon which the jury could predicate a finding of assumption of risk, assuredly it would find contributory negligence upon those same facts. As noted in Schrader v. Kriesel, 232 Minn. 238, 248, 45 N. W. (2d) 395, 400, assumption of risk may be but a phase of contributory negligence in certain cases. Lack of a label under the circumstances presented in the instant case was not prejudicial error for, as stated in Schroepfer v. City of Sleepy Eye, 215 Minn. 525, 532, 10 N. W. (2d) 398, 402:

"* * * Substance rather than name controls. A mere label is of no importance. The label attached does not change the substance of things."

■ Defendants contend that plaintiff is precluded from bringing an action in tort under M. S. A. 1949, § 176.06, subd. 1, by virtue of his receipt of workmen's compensation from his employer because of the contractual relation between The Texas Company and the Advance Express Company. Section 176.06, subd. 1, provided:

"Where an injury or death for which compensation is payable under circumstances also creating a legal liability for damages on the part of any party other than the employer, such party being at the time of such injury or death insured or self-insured in accordance with section 176.03, the employee in case of injury, or his dependents in case of death, may, at his or their option, proceed either at law

against such party to recover damages or against the employer for compensation, *but not against both.*" (Italics supplied.)

In Crawford v. Woodrich Const. Co. Inc. 239 Minn. 12, 20, 57 N. W. (2d) 648, 653, the restrictive provisions of this section were construed to read:

" 'The provisions of subdivision 1 of this section shall apply only where the employer liable for compensation and the other party or parties legally liable for damages were both either insured or self-insured and were engaged in the due course of business,' *on the same project, and their employees were working together in the performance of such project in a manner which exposed them to the same or similar hazards* on the premises where the injury was received and at the time thereof, and not otherwise."

Under the tariffs governing the hauling contract in the instant case, the driver was required to either unload articles at their destination or solicit aid from the consignee if necessary. Where, as here, the merchandise weighs over 500 pounds and mechanical means of unloading is required, the consignee is in charge of the unloading. The Advance Express Company had no connection with the business or projects of The Texas Company other than the mere delivery of the specified freight to The Texas Company. The instant case is clearly controlled by our decision in Urbanski v. Merchants Motor Freight, Inc. 239 Minn. 63, 70, 71, 57 N. W. (2d) 686, 690, where we said:

"* * * One who merely supplies or delivers a product to an employer is not engaged on the same project with him. * * *

"While it might be argued that Merchants and Seeger were engaged in the project of unloading the truck, we think that a more substantial relation must exist between the employer and the third party to bring them within this subdivision. [§ 176.06, subd. 1.] Not every contact between an employer and a third party in the course of conducting their separate businesses constitutes engagement by them on the same project. * * * It is sufficient for the purposes of this decision to state that one who delivers merchandise

to a manufacturer is not engaged with the manufacturer on the same project even though they join, through their employees, in unloading the merchandise from the delivery truck."

Defendants' attempt to distinguish the Urbanski case on its facts from the instant case is ineffective since there, as here, the injured employee was engaged with another employer's employee in unloading merchandise from a delivery truck when the accident occurred. While it is true that in that case it was the consignee's employee who was injured by reason of the alleged negligence of the truck driver, this is merely a distinction without a difference insofar as the applicability of this defense is concerned. We find § 176.06, subd. 1, inapplicable to the instant case because of the total absence of evidence that the Advance Express Company and The Texas Company were engaged "on the same project" as contemplated by the statute. It follows that the trial court did not err in refusing to submit this question to the jury.

■ Defendants contend that the trial court erred in not granting defendants' motion at the trial for leave to amend their answers so as to include the defense of wilful and wanton negligence on the part of plaintiff and in failing to submit this defense to the jury. The granting of leave to amend pleadings rests within the sound discretion of the trial court,[8] and we find no abuse of discretion in this respect. Likewise, we find no grounds for reversal in the trial court's refusal to instruct the jury with respect thereto. Cf. Olson v. Moorhead, 142 Minn. 267, 171 N. W. 923.

■ Finally defendants contend that it was prejudicial error for the trial court to deny their request that the jury be instructed with reference to the so-called defense of an act of God. As previously pointed out in footnote 4, there is no testimony in the record that the runway was blown by gusts of wind or that the high winds had any direct causal connection with the happening of this accident. Furthermore, as this court stated in Sauer v. Rural Co-op. Power Assn. 225 Minn. 356, 361, 31 N. W. (2d) 15, 17.

[8]See, 15 Dunnell, Dig. (3 ed.) § 7696.

"* * * if the injury is the joint result of a negligent act and an act of God, the actor is not relieved."

The trial court gave the jury detailed instructions as to plaintiff's burden of proof with respect to the issues of defendants' negligence and proximate cause. It instructed the jury in part as follows:

"* * * plaintiff must prove his case by what is known as a fair preponderance of the evidence. * * *

"By a fair preponderance of the evidence is simply meant by an overweight of the evidence; that is to say the testimony in the entire case must to some appreciable extent or some recognizable degree weigh more heavily in favor of the plaintiff's contentions. If he fails so to do such matters must be resolved in favor of the defendants for if the plaintiff has failed to explain how the accident happened, indicating negligence on the part of the defendants, the verdict must be for the defendants for they have no burden to explain how the accident was occasioned or free themselves from the charge of negligence. The mere happening of the accident does not standing alone entitle plaintiff to recover damages for the defendant is not an insurer of the safety of the plaintiff. The jury is not permitted to speculate on how the accident was occasioned. The burden of proof rests on the plaintiff to establish that fact and if the accident was, under all the circumstances, an unavoidable one then the plaintiff cannot recover. * * *

* * * * *

"Plaintiff not only has the burden of showing the negligent conduct of the defendants but must in addition establish by an overweight of the evidence that such negligence, if it existed, was *the* proximate cause of the accident. Proximate cause simply means direct cause. Proximate cause is such a cause which is not interrupted in its sequence by any other independent or efficient cause which changes the consequences of the original negligent act, if any there be." (Italics supplied.)

No exceptions were taken by either of the parties to the foregoing instructions except that defendants' counsel requested that the court include "the definition and defense of an act of God" in its charge.

While the trial court might properly have instructed the jury in accordance with the rule set forth in Sauer v. Rural Co-op. Power Assn. *supra,* its failure to do so was not prejudicial to defendants and plaintiff is in no position to complain.

Under these circumstances we cannot say that the denial of defendants' requested instruction constituted reversible error.

Affirmed.

