## MRS. ADLENE CARTER v. CAROLINA REALTY COMPANY AND CATAWBA INVESTMENT COMPANY.

(Filed 19 May, 1943.)

**1. Landlord and Tenant § 10—**

It is the duty of the owner of an apartment house to keep that part of the premises, of which he retains control for the use of all the tenants, in a reasonably safe condition.

**2. Landlord and Tenant § 11—**

> The landlord is not liable for injuries received by a tenant through failure of the landlord to light a common passageway, or to supply railings or guards, when the condition was the same at the time of the letting.

**3. Negligence § 5—**

> The fact that the defendant has been guilty of negligence, followed by an injury, does not make him liable, unless the connection of cause and effect is established, and the negligent act of the defendant must be the proximate cause of the injury.

**4. Landlord and Tenant § 11—**

> In an action against a landlord to recover damages for personal injuries, where plaintiff's evidence tended to show that she was injured in defendants' apartment house, where she lived as a tenant, by misjudging her step and falling on a badly lighted, common stairway without railing or guard, which she was in the habit of using, judgment of nonsuit was properly allowed.

APPEAL by plaintiff from *Harris, J.,* at November Term, 1942, of MECKLENBURG.

Civil action to recover damages for personal injuries resulting from a fall down a stairway in the hall of an apartment house, located at 107 Grandin Road, Charlotte, N. C., where plaintiff resided.

Plaintiff alleges the stairway was inadequately lighted, was not equipped with banisters, the steps were worn and the edges rough, all of which caused her to fall and sustain serious injuries. She further alleges the defendants permitted a refrigerator to be placed near the head of the stairway, which cut off some of the light which would have shown from another light located down the hall.

It is admitted that the defendant Catawba Investment Company, is the owner of the apartment house and the Carolina Realty Company is the rental agent of the owner.

It is also admitted the stairway consists of seven or eight steps, with a wall on each side but is not equipped with banisters and never had been so equipped.

The stairway leads from the hallway on the first floor of the apartment house to the outside entrance or back porch and to the basement of the building.

The evidence tends to show that the defendants retained control of the halls and stairways in the apartment house for the benefit of all the tenants thereof. The lights in the halls of said building were controlled by a switch in the basement of the building and were turned on and off by Lindsay Hargrove, the janitor of the building, who was an employee of the defendant, Carolina Realty Company.

The evidence discloses that plaintiff, on Monday night, 17 November, 1941, went down the stairway in question to the back porch of the apartment house to get a mop, which she kept there; she returned to her apartment using the same stairway. Later, between seven and eight o'clock, the plaintiff started down the stairway, holding the wet mop, she testified "So it wouldn't touch me. I had on good clothes," and further: "I was carrying the mop down the steps to put it back where I got it from and in doing so, stepped from one step to the other, I didn't step quite far enough over the second or third step and my heel caught on the steps. The lights were dim and this light over the steps was out. The light that gave light to the steps was out. It was dark, of course, with the light out and the other lights being dim. The lights were very dim and I could see a vision of the steps but I could not see the steps plainly." On cross-examination, she testified: "I thought I was stepping over the step. I thought I was over and when I went to put my foot down, my heel caught on the edge of the step. I didn't get it far enough over, that's what threw me. My heel caught on this edge here. I had not got my foot as far over as it was necessary to make the step and I hadn't got my foot as far over as I thought I had." She also testified there was a light in the middle of the hallway and it was burning. A refrigerator was in the hall near the top of the steps, which cut off some of the light from the hallway.

Plaintiff's evidence further tends to show the light over the stairway in question had been out for four or five nights and the janitor had been requested several days before the accident to replace the same. The janitor testified he had not been requested to replace the light, but admitted the light was not burning Saturday night, 15 November, 1941, and had not been replaced at the time of the accident.

At the close of plaintiff's evidence, the defendants moved for judgment as of nonsuit. Motion allowed and judgment signed accordingly. Plaintiff appeals, assigning error.

*Guy T. Carswell and Frank H. Kennedy for plaintiff.*
*H. C. Jones and Brock Barkley for defendants.*

DENNY, J. It is the duty of the owner of an apartment house to keep that part of the premises of which he retains control for the use of all tenants in a reasonably safe condition. In the absence of any agreement on the subject, a landlord's duty to his tenant with respect to a common passageway in a house consisting of several tenements is to keep such passageway in the condition it was in at the time of the letting, 10 R. C. L., p. 1040, and in 36 C. J., p. 215, we find the law stated as follows: "On the analogy of the lack of a common-law duty on

the part of a landlord to light common passageways, it has been held that a landlord is not liable for injuries received by a tenant through the failure of the landlord to supply railings or guards when the condition was the same at the time of the letting.  But the duty to maintain railings and guards may be imposed by statute."

The defendants moved for a bill of particulars, the motion was granted, and plaintiff set forth in her bill of particulars: "That plaintiff was caused to fall on said steps by reason of the light that was under the direction and supervision of the defendants being out in the hallway, and which had been out for some time prior to the time she was hurt on the night of November 17th, 1941, and too there was no banisters that plaintiff could hold to in going down the dark stairway which was unlighted by reason of the light not having been replaced, and further that the steps, by reason of usage and heavy articles having been bumped on them, the edges of them were broken and uneven, all of which caused her not to be able to see the risers of the steps and by reason of the broken and uneven edge she was unable to locate her foot properly on the steps."  However, her testimony does not disclose that the physical condition of the steps had anything to do with her failure to locate her foot properly thereon.  In fact, on cross-examination, she affirmed the correctness of her written version of how the accident occurred, as follows: "That I had just finished supper when I took a mop which I had used to mop the kitchen and bath out of the apartment to put it on the porch; that I had been out on the porch a little earlier, about ten or fifteen minutes earlier, to get the mop and misjudged the step when I was taking it back; that the light at the landing had been out for four or five nights; that we noticed the light out and had been complaining; that the people upstairs also had been complaining; that the hall was very dark because the light on the second floor does not shine down to the first floor. . . . I had been down them once all right on the night I was hurt; that on second thought I did go down one time during that period when the light was out to call the janitor about the heat.  I do not remember that I said 'I don't know what caused my fall unless it was that I misjudged the steps, thinking I was on the bottom step when actually I wasn't.' . . . I did not understand it that way.  I said in the statement that I had on low heel shoes; that I do not believe there was anything unusual on the steps or anything wrong with them. . . . That the steps were on the inside of the building; that there is no railing or anything at all to catch to; that the front light was burning but the hall is long, and this would not light these steps very well.  That statement is true as near as I could make it except I didn't remember about being on the bottom step."

The testimony does not support the allegation that the steps were defective, and under the authorities it cannot be held as a matter of law that it is negligence to fail to construct a banister in connection with a stairway where there is a wall on each side thereof, and it appears the same conditions exist in respect thereto as existed at the time the tenancy began.   The only act of negligence upon which the plaintiff can rely on this record for a reversal of the judgment below, is the allegation that the stairway was insufficiently lighted.

We do not think the evidence discloses any causal relation between the alleged negligence and the injury.   The plaintiff was familiar with the stairway, she knew the lights were dim, she had gone up and down the stairway within ten or fifteen minutes prior to her injury and, according to her testimony, she misjudged her step; and said further: "I thought I was stepping over the step.   I thought I was over and when I went to put my foot down, my heel caught on the edge of the step, I didn't get it far enough over, that's what threw me.   I had not got my foot as far over as it was necessary to make the step and I hadn't got my foot as far as I thought I had."

The Court said in *Byrd v. Express Co.,* 139 N. C., 273, 51 S. E., 851: "If it is conceded that there was negligence on the part of defendant, we do not think there was sufficient evidence to be submitted to the jury that it caused the death of the plaintiff's intestate.   There must always, in actions of this kind, be a causal connection between the alleged act of negligence and the injury which is supposed to have resulted therefrom.   The breach of duty must be the cause of the damage.   The fact that the defendant has been guilty of negligence, followed by an injury, does not make him liable for that injury, which is sought to be referred to the negligence, unless the connection of cause and effect is established, and the negligent act of the defendant must not only be the cause, but the proximate cause of the injury.   Shear. & Redf. on Negligence (4th Ed.), sections 25 and 26." *Alexander v. Statesville,* 165 N. C., 527, 81 S. E., 763; *Finch v. Michael,* 167 N. C., 322, 83 S. E., 458; *Rice v. R. R.,* 174 N. C., 268, 93 S. E., 774; *S. v. Sigmon,* 190 N. C., 684, 130 S. E., 854; *Harper v. Bullock,* 198 N. C., 448, 152 S. E., 405; *Smith v. Wharton,* 199 N. C., 246, 154 S. E., 12; *Lynch v. Telephone Co.,* 204 N. C., 252, 167 S. E., 847.

The judgment of the court below is
Affirmed.