**PETREY, Plaintiff-Appellee, v. LIUZZI, et, Defendants-Appellants.**

Ohio Appeals, First District, Hamilton County.

No. 6500. Decided April 16, 1945.

338

William Isaacs, Cincinnati, and B. Wm. Heidkamp, Cincinnati, for plaintiff-appellee.

Oliver W. Hardin, Cincinnati, and Brumleve, DeCamp & Wood, Cincinnati, for defendants-appellants.

## OPINION

By MATTHEWS, J.

This is an appeal from a judgment upon a verdict in favor of the plaintiff in an action for damages on account of personal injuries.

There is no dispute that the plaintiff was a lessee and occupant of rooms on the first floor of a dwelling house owned by the defendant. It was a two story building with attic. The second story was occupied by another tenant and the attic had been used as living quarters while plaintiff occupied the first story, but at the time in question here it was not so used.

On the first floor there was a hallway leading from the front toward the rear and at the rear end of the hall there was a door opening onto a stair leading down to the cellar.

There is substantial evidence that this hall, stair, and cellar were for the use of all the tenants and remained under the control of the defendant as the owner and lessor.

The plaintiff alleged and testified that she had occasion to go to the cellar and that while proceeding down the stairs, fell from some point on the stairs to the cellar floor and received the injuries of which she complains. In her petition, she describes the incident as follows: "That she opened the cellardoor and found that there was no light in the cellar; that she then attempted to descend the stairs, feeling her way and fell and was thrown to the bottom of the steps."

This was followed by the allegation:

"Plaintiff states that the direct and proximate cause of her injuries was the negligence and carelessness of the defendants in not properly lighting the cellar and stairway; and that this negligence was in violation of ordinance No. 1710 of the Code of Ordinances of the City of Cincinnati, Ohio, which was at all times in full force and effect and which provides as follows:

'No. 1710. Every stairway, corridor, passageway or other means of egress including exterior open spaces to or through which exits lead shall be kept adequately lighted at all times during which a floor served by such means of egress is occupied. Artificial lighting shall be provided wherever natural light is inadequate to see exit signs or other details.' "

Plaintiff further states that the defendants were careless and negligent in not providing adequate lighting for the stairway thereby violating the provisions of ordinance 1586-D of the Code of Ordinances of the City of Cincinnati, Ohio which was at all times in full force and effect, which ordinance provides as follows:

"All portions of group H buildings including basements and cellars shall be provided with adequate artificial illumin-

ation for the intended use of each room, companionway or hall.

"Plaintiff states that this negligence on the part of the defendants was wilful in that they had deliberately removed the bulbs and turned off the current in the cellar, and that this condition was so serious as to constitute a nuisance."

After the Court overruled a demurrer, the defendant filed a general denial.

As the plaintiff was the only witness who testified in support of her cause of action, it only becomes necessary to analyze her testimony to reach a conclusion as to whether error intervened in overruling the defendant's motion for an instructed verdict and for judgment. In response to the question as to what happened, she said:

"A. I had been running around all day, I had a colored man cutting wood for me and he had it in the back part, that is where the doors are, and he carried it all back and put it in the cellar—he called to me after he got the wood in for me to look at it and before I paid him, and I said, all right, I. will be down, and I got a handful of matches and started and I struck a match and it went out and the next thing I come to myself I was at the bottom of the steps and he caught hold of me and that was the last.

"THE COURT: You started down and struck a match; did the match continue to burn all the way down?

"A. No, it went out and I fell to the bottom of the steps and I never knew no more until I was in the hospital. * *"

The record does not disclose what hour of the day this occurred, but it is manifest from the facts that it occurred during the daytime.

There was evidence that the cellar was wired for lighting with electricity, but that sometime before the accident the defendant had removed the bulb and had the current turned off; and that the plaintiff had known this had been done for several months prior to the accident.

Two ordinances of the City of Cincinnati were put in evidence. One ordinance required all portions of "Group 'H' buildings, including basements and cellars" to be provided with adequate artificial illumination for the intended use of each room, compartment or hall. The other required all means of egress to be adequately lighted, and the lights in hallways of certain types of buildings to be kept burning after sunset

until midnight as to some and from sunset till sunrise as to others. These ordinances lacked probative value to impose a duty upon defendants, because the record fails to show upon whom the duty was imposed, and also failed to show that they were applicable to the time when and to the site where the accident occurred.

(1)   In 24 O Jur, 934, the law is stated, that:

"The owner of an apartment house being rented to several tenants, with halls and stairways in common, owes no common law to keep such halls and stairways lighted during the night season. The mere allegation that halls and stairways were in a state of darkness at the time of the accident in the absence of a duty on the part of the owner to keep them lighted, is not actionable negligence."

If no duty exists to maintain lights in the night season certainly there is no common law duty to maintain them in the daytime.

(2)   Reliance is based on §1027 GC, to impose a duty to maintain lights. That section is found in Chapter 12 of Division II of Title III of Part First of the General Code. Title III is confined to the organization of the executive department and Chapter 12 relates to the office of Chief Inspector of Workshops and Factories. **Sec. 1027 GC** imposes certain duties upon the owners and operators of shops and factories, and, among other duties, requires them to light the hallways, rooms, and all other places wherein sufficient daylight is not obtainable. It is contended that this two or three family dwelling comes within the definition of a shop or factory contained in §1002 GC. That section provides that for the purposes of that chapter the terms shall include manufacturing, mechanical, electrical, mercantile, art, and laundering establishments; printing, telegraph, and telephone offices, railroad depots, hotels, memorial buildings, tenement and apartment houses.

It is possible that the statutory definition is broad enough to include a dwelling of this sort, but a reading of §1027 GC, shows that its provisions were never intended to protect tenants from injuries occasioned in this way. It is expressly stated in the section that its requirements were imposed "To prevent injury to persons who use or come in contact with machinery therein or any part thereof." The plaintiff was not injured by coming in contact with machinery.

**Doster v Murr, 57 Oh Ap, 157**, decided by this Court, is cited as requiring a different construction. That case did not involve §1027 GC, or require a construction of the meaning of the phrase "Shops and Factories." It involved §1006 GC, found in the same chapter, but expressly made applicable to tenement houses, apartments, and many other establishments, in addition to shops and manufacturing institutions. Its provisions were not limited to shops and factories. As it expressly applied to tenement houses and apartments, the only question presented was whether the evidence described such a structure. Indeed, §1006 GC, does not contain the word factory, and instead of it indicating that the definition of §1002 GC would cause "Shops and Factories" to include a dwelling the contrary is true. It would seem to indicate that when the legislature intended its provisions to extend to dwelling places, it used apt language and did not rely on the omnibus definition of §1002 GC.

(3) Assuming, however, that a duty to maintain a light rested upon the defendant, either by ordinance or statute or both, we are of the opinion that the evidence fails to show that the failure to perform that duty caused the plaintiff's injuries. The evidence is completely devoid of any circumstance that would lead the mind to conclude that the absence of lights caused her to fall. She was on the stairs with a lighted match in her hand. The match ceased to be ignited and she fell to the cellar floor at once. The mere extinction of the light could not have caused her to fall, and there is no other cause suggested. The cause of her fall is left entirely to speculation.

(4) It is not left in doubt that the plaintiff with full knowledge that the defendant had not provided any way of lighting this stairway and that it was dark, proceeded to use the stairway, trusting to her ability to use it safely by means of light supplied by matches with which she had provided herself. Under such circumstances, it must be held that she was the author of her own misfortune.

In **24 O Jur, 935 and 936**, it is said:

"Negligence on the part of the tenant, which is a contributory cause of the damage, bars any relief against the lessor. Thus, a tenant cannot recover for an injury received through a defect in property under the control of the landlord, where the defect is as apparent to the tenant as to the landlord."

It has been frequently held by the Supreme Court that a tenant or invitee who is injured by taking "a step in the dark" ordinarily has no cause of action. The bar to a recovery is usually phrased as contributory negligence. In the third paragraph of the syllabus to **Flury v Central Publishing Co., 118 Oh St, 154**, it is said:

"The testimony of a plaintiff invitee, in an action for negligence, that from a lighted room he opened a closed metal-covered sliding door, was confronted with total darkness beyond the door, that he then stepped into such total darkness, to his injury, without any knowledge, information or investigation as to what such darkness might conceal, raises an inference of negligence on his part which, in the absence of any evidence tending to refute such inference, will require a directed verdict for the defendant."

If a step in the dark in ignorance of the conditions confronting him defeats recovery, it would seem that, for stronger reasons, entering a dark area with full knowledge of all the facts and surrounding conditions would preclude a recovery for injuries sustained by some failure to adjust to those conditions in order to insure safety.

Flury v Central Publishing Co., supra, and **Kahn's Sons Co. v Ellswick, 122 Oh St 576**, seem to be conclusive against a recovery in this action. Unlike **Painesville Utopia Theatre Co. v Lautermilch, 118 Oh St 167**, at no place in the plaintiff's testimony can be found any explanation of her fall, from which an inference could be drawn that she was in the exercise of due care. To so conclude would be a mere assumption just as it would be to conclude that her fall was caused by the failure of defendant to furnish light.

(5) While the record requires that final judgment be entered for appellant, we take notice of an error in the charge that would require a reversal of the judgment in any event.

The plaintiff based her cause of action upon negligence of the defendant in not properly lighting the cellar and stairway, and then alleged that the condition created "was so serious as to constitute a nuisance." This, however, did not enlarge the issue. By describing the default in one place as negligence and at another as a nuisance, did not create two defaults. Nomenclature is not decisive of the rights of the parties. However, counsel argues that the situation presented two issues for the jury and that, therefore, the two issue

rule applies. As there was but one issue—the default of defendant in not lighting the cellar and stairway—there is no basis for the application of the rule. Furthermore, as the error related to the measure of damage, it would affect all the issues no matter how many.

After charging on compensatory damages, the court instructed the jury "That in addition, if you find there was wilful negligence you will add to those sums such sum as in your judgment will teach them a lesson not to do that again."

Of course, if the defendant intended to injure the plaintiff by his act, it would have presented a case for the jury, in its discretion, to award punitive damages. But the wrongful act could not be both wilful and negligent. If the injury was intended, it would be wilful. If not intended, but, nevertheless, resulted from a wrongful act, it would be caused by negligence—that is, by a failure to use due care.

In **13 O Jur, 241**, et seq., it is said:

"In accord with the general rule elsewhere, Ohio courts deny the recovery of exemplary damages for mere negligence or omission of duty."

Of course, if the default is wilful and manifestly a gross and reckless disregard of consequences, there is authority for the proposition that exemplary damages may be awarded, but that is not the kind of case presented by this record. At most, it shows a failure to perform a duty imposed by law. Assuming that a charge on punitive damages would have been appropriate, there was manifest error in this charge in that it made it the duty of the jury to award punitive damages under given circumstances.

In **13 O Jur, 242**, it is stated: "In Ohio, in accord with the well established rule, exemplary damages are recoverable in no case, as a matter of right; their allowance is discretionary with the jury. The jury is not required to award exemplary damages, although they find that the defendant was moved by actual malice."

For these reasons and for error in overruling the appellant's motion for an instructed verdict and for judgment notwithstanding the verdict, the judgment is reversed and final judgment entered for the appellant.

HILDEBRANT, P. J., MATTHEWS & ROSS, JJ., concur in the opinion, syllabus & judgment.