# GLEN L. ROUTH v. RAY ROUTH.

97 N. W. (2d) 644.

July 10, 1959—No. 37,777.

*Robert C. Holtze,* for appellant.
*Gallagher & Madden* and *Miles Zimmerman,* for respondent.

KNUTSON, JUSTICE.

This is an appeal from an order of the trial court denying defendant's motion for judgment notwithstanding the verdict or a new trial.

The facts are not seriously in dispute. Plaintiff, Glen L. Routh, 44 years of age, and defendant, Ray Routh, 41 years of age, are brothers. Each is engaged in operating a rented farm located near New Richland, Minnesota. The farms are about a mile apart. For a number of years it has been the practice of plaintiff and defendant to exchange

work, each helping the other, especially during the cornpicking, haying, and harvesting seasons.

On September 25, 1957, plaintiff was engaged in helping defendant harvest soybeans with a combine thresher on defendant's farm. The field on which the parties were working was a 40-acre field which extended approximately 150 rods in length north and south. In harvesting the field, approximately 8 rows running east and west on the north and south ends of the field were first harvested so that when the regular combining pattern of a north-south direction was begun the machine would have room in which to turn around without running over the unharvested beans.

The combine which was in use was about 10 or 12 feet wide. It was attached to the tractor with a drawbar or tongue which was about 10 or 12 feet in length, made of four angle irons with strap iron cross braces, narrow at the tractor end and wider at the combine end, resembling the tower of a miniature windmill. The drawbar was about 18 to 20 inches above the ground. The combine was so attached to the tractor that it was offset to the right on a bias. The left wheel of the combine was just outside the harvested row, and the right rear wheel of the tractor was just inside that row toward the uncut beans.

On the day involved and prior to the occurrence of the accident, the end rows had been harvested. Defendant was engaged in operating the equipment. Plaintiff was supposed to operate a truck into which the beans were loaded from a bin on the combine. On the trip around the field in which plaintiff was injured, the combine left the south end of the field headed in a northerly direction. Defendant was riding on a step on the left side of the tractor. When the combine had traversed the field in a northerly direction, made its turn, and traveled about two-thirds of the length of the field in a southerly direction, plaintiff told defendant that he was going to mount the combine and level out the beans in the bin so that they could make a complete round trip. He left the tractor and put both hands on a part of the combine and his foot on the drawbar or tongue referred to above, and in some manner he missed his step and his foot was caught by the large wheel on the combine and he was pulled under it, the wheel running over his body and inflicting quite serious injuries upon him. When his foot

came into contact with the wheel, plaintiff yelled and defendant stopped the tractor, but by that time the wheel had run over his body.

There is evidence from which the jury could find that shortly before the accident occurred the tractor had turned slightly to the left and that defendant was in the process of straightening it out when the accident occurred. Defendant testified that he did not know that plaintiff had left the tractor, but plaintiff's testimony is to the contrary.

The case was submitted to the jury on the issues of negligence and contributory negligence, and the jury returned a verdict of $2,730.60 in plaintiff's favor, which was itemized showing an allowance of $1,530.60 for doctor and hospital bills and $1,200 for pain and suffering. Defendant moved the court for judgment notwithstanding the verdict or for a new trial. Plaintiff moved the court for a new trial on the issue of damages alone. The trial court denied defendant's motion and granted plaintiff's motion.

The only questions presented here are whether the evidence is sufficient to sustain the jury's verdict on liability and whether plaintiff was guilty of contributory negligence as a matter of law. Incident to these questions we consider the question whether there should be a new trial on the issue of damages alone or on all issues.

Apparently it is plaintiff's contention that an inference of negligence may be sustained on the theory that defendant failed to maintain a lookout to the rear, but at the same time plaintiff claims that defendant was negligent in permitting the tractor to stray from a straight course of travel. Even if we were to assume that defendant negligently permitted the tractor to turn slightly from its proper course of travel, there is no evidence to justify an inference of causal connection between that act and the injuries sustained by plaintiff. There is no evidence that the drawbar or tongue on which plaintiff intended to step moved sideways or that anything defendant did had any causal connection with the happening of the accident. How the accident occurred is left completely in the realm of conjecture. Plaintiff frankly admits that he does not know how it happened. The only testimony in the record on this phase of the case comes from plaintiff. It is as follows:

"Q. Will you describe what happened from the time you got off of the tractor up until the time this happened?

"A.   I went back to get on the combine. When I took ahold of it for some reason or other I missed my step and the wheel caught my toe and it ran over me.

\*     \*     \*     \*     \*

"Q.   Had you stepped on the tongue?

"A.   Well, I touched it with my foot but it didn't—

\*     \*     \*     \*     \*

"Q.   Did you grab it [the combine] with one hand or two hands?

"A.   Two hands.

"Q.   Your recollection is your foot touched the tongue where you intended to step?

"A.   Yes, that is right.

"Q.   What is your next recollection?

"A.   The wheel catching my toe and I was trying to pull it out of there.

\*     \*     \*     \*     \*

"Q.   Where with relation to the wheel were you going to step on the tongue?

"A.   In front of the wheel.

"Q.   In front of the wheel?

"A.   Yes, a couple of feet in front I would say.

"Q.   Exactly what happened then you are not sure of, is that it?

"A.   All I remember of is taking ahold of the combine to step up there and missing the combine and the wheel catching me."

In seeking to establish some causal connection between the act of defendant in turning the tractor, the only evidence found is the following testimony of defendant:

"Q.   Isn't it a fact, Ray, that at the time—just shortly before this accident occurred when your brother, Glen, got off that you were watching him and that suddenly your tractor went off of the row so that you turned around to get it back in and turned your tractor and that the next thing you heard was Glen shouting, is that about what happened?

"A.   Yes.

"Q. So that it is true you were watching and then the tractor—as you were watching the tractor got off of the rows—you say you have to watch both the combine and the tractor to keep it in the row—so that when he got off you were looking like that apparently, is that correct?

"A. Yes.

"Q. And your tractor got out of the row so you turned around and got that adjusted back in the row again, is that correct?

"A. Yes.

"Q. And then the next thing you heard was Glen shout, is that correct?

"A. Yes.

"Q. How far had your tractor gone out of the row?

"A. Not over a couple of feet.

"Q. What—would that be to the right or to the left as you remember?

"A. To the left.

\* \* \* \* \*

"Q. And then you swung it back to the right?

"A. That is right.

"Q. Got it back in the row. Did you get it back in the row before he hollered?

"A. I don't know."

With respect to the nature of the turn made by defendant, the only evidence is that of defendant himself as follows:

"Q. In regaining your proper direction along the row at that speed does it take a little while? Please explain.

"A. It don't come back right away.

"Q. It is a gradual process?

"A. Gradual."

■ We have frequently held that a verdict cannot rest on such speculative evidence as we have here. While it is true that in testing the sufficiency of the evidence to sustain a verdict we must accept the evidence most favorable to the verdict and every inference that may fairly be drawn therefrom, it is also true that an inference must

be supported by evidence that will justify it. The burden rests on the party asserting the fact to be established to produce such evidence.[1]

In MacIntosh v. G. N. Ry. Co. 151 Minn. 527, 530, 188 N. W. 551, 553, we said:

"* * * The general rule of law is well understood. While the evidence in proof of the cause of the accident may be circumstantial, it must not leave it in the field of conjecture. The burden of proof is upon the plaintiff. It is not enough that the evidence be consistent with the theory of the accident. It must go further—it must support it. It must justify an honest inference. It is not enough that it suggest a possibility."

■ Here, there is no evidence that will justify an inference that the negligence of defendant, if any, had any causal connection with plaintiff's missing the tongue he intended to step on. If plaintiff now contends that there was some movement of the tractor which caused the drawbar to move at the point where plaintiff attempted to step on it, proof of that fact ought to be available. Whether the front or rear wheels of the tractor had left the straight path is left entirely to conjecture. Whether the movement made by the tractor in bringing it back to its desired path would have caused a movement of the drawbar at the point where plaintiff intended to step on it is likewise left entirely to speculation. Aside from the theory that defendant was negligent in permitting the tractor to stray from its path and in bringing it back to the desired path, and that such movement in some manner caused the drawbar to move at the time plaintiff was about to step on it, the only other theory that plaintiff advanced is that defendant was negligent in not looking to the rear at all times after plaintiff left the tractor. Defendant had the job of running the equipment. He not only had to keep the tractor in its proper path but he had to watch the cutting bar on the combine to see that it was neither too high nor too low. It could

---

[1]Smock v. Mankato Elks Club, 203 Minn. 265, 280 N. W. 851; Greenwood v. Jack, 175 Minn. 216, 220 N. W. 565; Nealis v. Chicago, R. I. & P. Ry. Co. 173 Minn. 587, 218 N. W. 125; MacIntosh v. G. N. Ry. Co. 151 Minn. 527, 188 N. W. 551; Bruckman v. Chicago, St. P. M. & O. Ry. Co. 110 Minn. 308, 125 N. W. 263.

hardly be expected of him that he would continually keep his eyes to the rear in order to see that plaintiff did not place himself in a dangerous position.

What has been said about the negligence of defendant applies equally well to plaintiff's contributory negligence. He was familiar with the equipment and fully aware of the dangers of attempting to mount it while moving. Unless defendant did something to increase the known hazards, plaintiff must be held to have assumed the risk of doing that which he attempted to do.

While the evidence in this case, as it now stands, does not sustain a verdict in favor of plaintiff, it may be possible to develop the facts on a new trial so as to show what happened. Rather than grant judgment for defendant, we think that there should be a new trial on all issues. In a case of this kind, where it is evident that the verdict is inadequate in amount and the evidence is so completely unsatisfactory on the issue of liability, there should be a new trial on all issues rather than only on the issue of damages, especially where there is a probability that on another trial stronger evidence might be adduced.[2]

Reversed and new trial granted on all issues.

Mr. Justice Frank T. Gallagher took no part in the consideration or decision of this case.

---

[2] 14 Dunnell, Dig. (3 ed.) § 7143; Carlson v. Fredsall, 228 Minn. 461, 37 N. W. (2d) 744; Parrish v. Peoples, 214 Minn. 589, 9 N. W. (2d) 225.