LAWRENCE RISNES v. DONALD STONEBREAKER.

110 N. W. (2d) 475.

September 8, 1961—No. 38,076.

King & MacGregor and David W. Nord, for appellant.
Ryan, Ryan & Ebert and Donald I. Ryan, for respondent.

THOMAS GALLAGHER, JUSTICE.

Action for personal injuries sustained by plaintiff, Lawrence Risnes, arising out of an accident wherein an automobile owned by defendant, Donald Stonebreaker, swerved and overturned in a ditch adjacent to the highway. The accident happened August 2, 1952, at about 2 a. m. near Jenkins. At the time, the car was occupied by plaintiff, defendant, and one Delmar Riley. The jury returned a verdict in favor of plaintiff. On appeal the principal issue relates to whether plaintiff or defendant was driving at the time of the accident. A special interrogatory submitted to the jury was answered as follows:

"Was the plaintiff, the defendant or Riley driving the automobile here involved at the accident in question?
"Answer: Donald Stonebreaker [defendant]."

On appeal defendant contends that (1) the evidence fails to support the jury's verdict; and (2) plaintiff's counsel, in his closing argument, was guilty of misconduct in advising the jury as to the effect of their answer to the special interrogatory and in asserting that counsel for defendant had inferred that counsel for plaintiff was a "crook" because in two previous actions complaints drawn by the latter had alleged that plaintiff was the driver.

The evidence indicates the following: Plaintiff, 18 years of age at the time, and defendant, 23 years then, lived together in Minneapolis where they were both employed. On August 1, 1952, accompanied by plaintiff's father, they drove to Pequot Lakes in defendant's car. It was customary for plaintiff to drive and he did so on this occasion.

After leaving plaintiff's father at Pequot Lakes, plaintiff and defendant drove on to a tavern near Cross Lake. They went in and were joined by Delmar Riley who had previously been known to them. After an interval during which plaintiff and defendant had consumed some intoxicants, all three left for the "Rendezvous" near Pequot Lakes. On the trip from Cross Lake to the "Rendezvous," it is undisputed that plaintiff drove the car. They arrived at the "Rendezvous" sometime after 1 a. m. August 2, 1952. After they had partaken of additional intoxicants at this establishment, they proceeded to drive to Riley's home which was some distance north of the "Rendezvous," near Jenkins. After some discussion as to who should drive, they all left with plaintiff again driving the car.

From this time on some differences in the testimony arise. Plaintiff testified that after leaving the "Rendezvous" he drove through Bar Harbor, Nisswa, Pequot Lakes, and Jenkins, and started north on a county road out of Jenkins toward Riley's home; that "up a ways" on this road he stopped the car and all three got out to relieve themselves; that he then got in the car through its right-hand door and seated himself in the middle of the front seat; that the last thing he remembers is the other two men standing in front of the car talking; that his last recollection of anyone driving is when he was driving; that he does not recall whether he moved into the driver's seat after he returned to the car or the position of any of its other occupants when the accident happened; and that he remembered nothing as to the circumstances of the accident.

Defendant testified that he had no recollection whatever of any stop north of Jenkins but admitted that it may have happened; that he remembered the accident happening as described; that plaintiff was driving at the time; and that of this he was positive. Riley, the other passenger, testified that when they left the "Rendezvous" plaintiff was driving and that defendant was seated in the middle of the front seat; that he (Riley) was seated in the right front seat; that he remembered no stop after leaving the "Rendezvous"; and that plaintiff was driving at the time of the accident. In describing the accident, he testified that "Don [defendant] and I were talking, I don't exactly remember what about, but the car swerved to the left side of the road

and hit a mailbox and then swerved to the right side of the road, and it turned end over end. That's all I remember."

Plaintiff's brother, Orville Risnes, testified that shortly after the accident he had asked defendant who had been driving and that defendant had replied that he did not know. Mrs. Joyce Eue, a nurse's aide at St. Joseph's Hospital in Brainerd, testified that on August 19, 1952, some 17 days after the accident, a man she did not know interviewed plaintiff at the hospital and asked him if he had been driving at the time of the accident and that plaintiff had answered "yes."

Plaintiff's first action for injuries arising out of the accident was commenced in 1952. In the complaint therein it was alleged that "the said automobile of the defendant, then being driven by plaintiff, was caused to overturn." After dismissing that action, plaintiff commenced a second action in 1954 in which the identical allegations were made in the complaint. That action was also dropped by plaintiff.

After the accident, defendant's automobile was examined by Orville Risnes, plaintiff's brother. He found that the right half of the divided windshield was out, except for a piece about 3 inches long in the bottom right corner, and that the left half of the windshield was not broken; that the steering wheel was not bent and that the glass of the door on the left front of the car was either cracked or partly out. Defendant's father, Raymond Stonebreaker, examined the car on Tuesday following the accident. He testified that practically every window in the car was broken and that some were out completely; that the glass on the driver's door on the left side was out; that the left windshield was shattered badly but otherwise remained in place; that the right windshield was practically all gone; that the glass in the right door and in the right rear panel was out; that the rear window was in place but shattered; and that the glass in the left rear panel was in place.

No testimony was submitted as to the positions of the occupants after the accident or as to whether they remained in the car or were thrown free. Neither the defendant nor Riley was seriously hurt. Defendant testified that he had observed plaintiff two or three days after the accident and also about a week later and had noticed that plaintiff had no cuts on his face but that he did have a bruised area around one eye. Both plaintiff's brother and his attending physician testified that

there were no cuts on plaintiff's face after the accident. Medical testimony indicated that plaintiff suffered a broken neck, a broken jaw, and a black right eye.

During the closing argument by plaintiff's counsel, the following occurred:

"Mr. Ryan [plaintiff's counsel]: * * * We are first met with the claim, or at least the insinuation, that I have been dishonest in this thing in some way, by these two complaints [in the first two actions], that obviously were my complaints and I drew them. * * *

* * * * *

"Mr. MacGregor [defendant's counsel]: Your Honor, I object to any reference by Mr. Ryan to my trying to impugn his honesty. * * *

* * * * *

"The Court: I imagine it is over now anyway. You brought the thing into the case.

"Mr. MacGregor: I take exception."

Later in his final argument, plaintiff's counsel stated:

"* * * You have got to decide who was driving that car, because the Court will ask you in a separate question 'Was the plaintiff or the defendant or was Riley driving the automobile?' Folks, you have to answer that question and put one of those names in there, who was driving the car.

"I don't think there should be any objection to this; if you put in there that Lawrence [plaintiff] was driving the car and give him the verdict, it isn't going to mean anything.

"Mr. MacGregor: I object to that statement, and I ask for a mistrial, and counsel knows he cannot comment on the legal effects, and that the Court alone can decide on that question.

"The Court: You have your exception. I will deny the motion for the time being."

Defendant's subsequent motion for judgment notwithstanding the verdict or for a new trial, based upon the same grounds claimed as error in the present appeal, was denied. In a memorandum attached to the order denying this motion, the court stated:

"* * * The undisputed evidence that plaintiff had been driving since early the previous morning and had tried to force the defendant to drive his own car gave the jury additional evidence for a finding that defendant was driving at the time in question."

■ The burden of establishing that defendant, or someone acting in his behalf, was the driver of his automobile at the time of the accident rested upon plaintiff. Frye v. Anderson, 248 Minn. 478, 80 N. W. (2d) 593; Aasen v. Aasen, 228 Minn. 1, 36 N. W. (2d) 27; State v. One Buick Sedan Automobile, 216 Minn. 129, 12 N. W. (2d) 1. The occupants other than plaintiff testified positively that plaintiff was driving at the time, whereas plaintiff testified he had no recollection whatever as to the identity of such driver. He admitted that when they left the last tavern at which they had stopped he was driving. Obviously, the direct evidence as outlined falls far short of lending any support to a finding that defendant or his representative was driving when the car turned over, a finding essential to plaintiff's cause of action.

■ As to the circumstantial evidence, which on occasion has been held sufficient to raise a jury question on an issue of this kind, it is inescapable that in the instant case any reasonable inferences which can be drawn from this type of evidence would be equally consistent with a finding either that plaintiff was driving or that he was not the driver. Accordingly, it would follow that such evidence is too speculative and conjectural to be of any weight in determining the vital issue herein. Smock v. Mankato Elks Club, 203 Minn. 265, 280 N. W. 851; Saaf v. Duluth Police Pension Relief Assn. 240 Minn. 60, 59 N. W. (2d) 883; Whitman v. Speckel, 237 Minn. 36, 53 N. W. (2d) 558.

As illustrative of this point, plaintiff's argument—that the demolition of the right windshield which was not in front of the driver's seat indicated that plaintiff, who was the only one injured, must have sustained his injuries when he was projected through this side of the windshield and hence that he could not have been the driver—is met by defendant's contentions that because a windshield has been demolished in a car accident it does not of necessity follow that someone was hurled through it and that it is equally probable that plaintiff's injuries may have been caused by his being thrown against the interior of the car

when it turned over, particularly in view of the fact that no cuts from broken glass or otherwise were found on his face after the accident. Likewise, in opposition to plaintiff's argument that, since he was the only one who was not intoxicated at the time, a reasonable inference would follow that because the accident happened the driver must have been intoxicated and hence that one of the other occupants was driving, defendant asserts that the intoxication of the other occupants may have been the reason for their insistence that plaintiff should drive to Riley's home.

■ Cases wherein circumstantial evidence has been held to support a jury's finding as to the identity of the driver of a car involved in an accident are distinguishable in that in each of them such evidence was supported in some measure by direct testimony or by statements, admissions, or physical facts which gave support to the jury's findings with reference thereto.[1]

---

[1]In Nicol v. Geitler, 188 Minn. 69, 247 N. W. 8, direct testimony disclosed that the alleged driver had driven throughout the evening in which the accident occurred; that the car involved had been entrusted to him by the owner, his father, who had instructed him not to let anyone else drive it; that he disappeared after the accident, which would seem inexplicable if he were not the driver; and that decedent had never been seen to drive any car, from which it might be concluded that he did not drive.

In Manahan v. Jacobson, 226 Minn. 505, 33 N. W. (2d) 606, there was testimony by defendant that decedent was driving at the time of the accident, corroborated by two witnesses who testified that immediately after the accident they had observed decedent's body some 50 feet from the car and had heard defendant repeating (226 Minn. 506, 33 N. W. [2d] 607): "I shouldn't have let him drive; it's all my fault; I shouldn't have let him drive." In conflict with this there was submitted a signed statement of defendant made some time before trial in which he had said that he was driving and must have fallen asleep, and testimony of witnesses that at various times after the accident defendant had stated that he, and not decedent, was driving. At the trial defendant testified that the signed statement was not true and that he had no recollection of making the oral statements. A jury question was presented on the issue.

In State v. Ewing, 250 Minn. 436, 84 N. W. (2d) 904, the evidence disclosed that the owner of the car had turned it over to defendant shortly before the accident; that while at a tavern defendant boasted about the

In the instant case, as above mentioned, all of the direct evidence as to the identity of the driver, as well as plaintiff's admissions or statements made prior to trial with reference thereto, were to the effect that plaintiff was the driver, and reasonable inferences based upon the circumstantial evidence presented would equally support a finding that plaintiff was or that he was not the driver; accordingly, the order appealed from must be reversed. Our conclusion on this issue makes it unnecessary to determine other questions raised on this appeal.

Reversed with directions to enter judgment for defendant.

---

speed of the car he had then been driving; and that after the accident he was found in the driver's seat with his head and body extending toward the pavement to the left, his feet still under the steering wheel, while decedent was lying with his feet on the right side of the car under the glove compartment.

In Erickson v. Paulson, 251 Minn. 183, 87 N. W. (2d) 585, direct testimony established that decedent took over the driving of defendant's car some time before the accident, but the sheriff who arrived shortly after the accident testified without objection that defendant's brother had then stated that defendant had been driving when the accident occurred. Defendant remembered nothing about the accident and the other occupants, including defendant's brother, had been asleep for some time before it happened.