PAUL MUCKLER, INDIVIDUALLY AND AS TRUSTEE,
v. JOSEPH M. BUCHL.

150 N. W. (2d) 689.

May 12, 1967—No. 40,267.

*Nord & Webster* and *David W. Nord,* for appellant.

*Maun, Hazel, Green, Hayes, Simon & Aretz* and *Merlyn C. Green,* for respondent.

SHERAN, JUSTICE.

Appeal from a district court judgment.

About 8:30 p. m., on August 11, 1962, plaintiff's decedent, a 55-year-old woman, fell down a flight of stairs extending from the landing between the first and second floors down to the first floor of the Minneapolis apartment house in which she had been a tenant for 7 years. She broke her hip in the fall and was taken to a hospital where she died less than 4 months later.

On March 15, 1963, decedent's husband commenced an action for death by wrongful act against the apartment-house owner. At trial, which commenced August 9, 1965, plaintiff claimed the accident was caused by defendant's negligence in having the stairs too dimly lit for safety contrary to a relevant ordinance and to his common-law duty. Pursuant to a verdict in favor of plaintiff, post-trial motions having

been denied, judgment for $17,000 was entered on October 26, 1965, and defendant appealed therefrom on January 24, 1966.

The issues for decision are these:

(1) Does the evidence justify a finding that the fall which caused injuries resulting in the death of plaintiff's decedent was caused by the negligence of defendant in failing properly to light the stairway in the apartment building where the fall occurred?

(2) Did the trial court err by its failure to submit the defense of assumption of risk to the jury?

(3) Did prejudicial error result by reason of an instruction that the limit of recovery in an action for death by wrongful act was in the amount of $35,000 in this situation where the statutory limit of recovery at the time of the accident and death was $25,000?

(4) Did the trial court err in receiving the evidence of an expert witness who gave testimony as to the reasonable worth and value of household services of the kind performed by decedent before the accident?

(5) Was it error for the trial court to refuse to accept expert testimony showing the light measurement at a place observable by the jurors and used as a standard of comparison by one of defendant's witnesses in describing visibility at the accident site?

■ Were it not for our decision in Majerus v. Guelsow, 262 Minn. 1, 113 N. W. (2d) 450, we would be hesitant to affirm the jury's implicit finding that decedent was caused to fall because of the darkness of the stairway, there being no direct evidence on the issue.

Just before she fell, decedent was walking down the stairs directly behind a departing guest who had been visiting her in the second-floor apartment occupied by decedent and her husband. The guest gave the following description of the events occurring between the time she left decedent's apartment and the time the critical injury was sustained:

"Q. * * * As you went out into the hallway and as the door of the apartment was closed, how can you describe the condition of the light at that time?

\* \* \* \* \*

"The Witness: It was dark. I could distinguish the hand rail and I hung onto that because I could not tell where the steps were.

\* \* \* \* \*

"Q. I believe there is one flight of steps there from that second floor landing down about five or six steps to a landing between floors; is that your recollection?

"A. Yes, sir.

"Q. Right at that landing, between the floors \* \* \* there are two little windows adjacent to the landing; is that right?

"A. I believe so.

\* \* \* \* \*

"Mr. Green [plaintiff's attorney]: Now, you got down to the first floor landing, or the landing between floors, without any particular incident?

"A. Yes.

"Q. Did you then make the turn to go down the second flight to the landing on the first floor?

"A. Yes, sir.

"Q. Tell us what happened as you went down that second flight of stairs?

"A. I was being very careful. I couldn't tell where the steps were so I had to feel my way down, and then I don't know how far I was from the bottom, probably three or four steps, and I heard something behind me and I imagined it was Mrs. Muckler tripping or falling—I couldn't tell then—so I instinctively put my hand out and there was nothing there, and I heard the scream and the thump and there she was.

"Q. At this point where you heard this noise, had Mrs. Muckler been behind you?

"A. Yes, she was behind me.

"Q. And the rest of the people you described were all on down ahead of you?

"A. Some place ahead.

"Q. Did you see her go past you when this occurred or feel her or anything? Were you aware of her going past?

"A. No.

"Q.   Why was that?

"A.   I don't know why it was. I suppose the excitement, it happened so fast, I can't really tell.

"Q.   Where did Mrs. Muckler then finally wind up?

"A.   I heard the thump and the scream almost simultaneously and then the doors from the first floor opened so then I could see her.

"Q.   Where was she?

"A.   Lying on the floor, on the landing."

If decedent ever said what caused her to fall, the record does not disclose it.

An electrical engineer who measured the light at the place of the accident at a time when, according to the evidence, conditions were substantially the same as those prevailing at the time of the event gave testimony from which the jury could infer that the light at and near the place of the occurrence measured one-tenth of a foot-candle or less—significantly below the two foot-candles required by an ordinance of the city of Minneapolis.[1]

At the time of the accident the stairway was not lighted by artificial illumination. Defendant's agent was in exclusive control of the switch to the lights which could have been used for this purpose.

Except for the inadequacy of the lighting, the evidence shows that there was no defect in the stairway to which the fall could be attributed. A handrail was in place.

Decedent, about 55 years of age, was in good health except for a diabetic condition which under the evidence the jury could have found

---

[1] No exception has been taken to the following instruction given to the jury by the trial court: "You are instructed that at the time of the fall herein on August 11, 1962, there was in existence in the City of Minneapolis an ordinance which reads as follows: 'Every public hall and public stairway in every multiple dwelling shall be lighted by means of electrically lighted fixtures. Such lighting fixtures shall provide two foot-candles of light in every part of every public hall and public stairway at all times; provided that such electrical lighting may be omitted from sunrise to sunset where there are windows or skylights opening directly to the outside and where the total window or skylight area provides two foot-candles natural light to all parts of each such public hall or stairway.' "

to be controlled. Also there was evidence from which the jury could have found that decedent did not consume intoxicating liquors on the day of the accident or at any other time. There is no evidence indicating that decedent had fallen while descending the steps of the apartment building on any prior occasion during the 7 years she lived there as a tenant.

The evidence is consistent with the theory that decedent fell on the stairway because of the darkness. But it is also consistent with the possibility that the fall would have occurred no matter what the lighting condition might have been. We can eliminate the diabetic condition as a probable explanation of the occurrence in view of the testimony of competent witnesses that decedent was not suffering observable symptoms before and as she started down the stairway. The possibility that the fall was attributable to intoxication can be eliminated on the basis of testimony to the effect that decedent never used intoxicants. But experience tells us that people sometimes fall on stairways even though fully alert and in the best of health. We cannot say with certitude that this was not one of those instances.

Construing the evidence in the light most favorable to the prevailing party, as we must, we are still working in the field of probability. And the degree of probability of a connection between an alleged cause and a given result needed to sustain an affirmative jury finding cannot be defined with mathematical certainty. The line separating fact situations where an inference of causation is permissible from those in which it is not must, of necessity, reflect the general practical experience of the court called upon to make the demarcation. So considered, it seems reasonable that one attempting to descend a stairway so dark that the steps are barely discernible would be likely to fall because of the darkness. And, the accident having happened, it seems to us more probable that the darkened state of the stairway was the precipitating factor for the accident than otherwise. The minimum standards for lighting for stairways set by Minneapolis ordinance also suggest an experience-tested relationship between lack of adequate lighting on stairs and accidents of the type with which we are here concerned.

Admittedly, the case is a close one. In such a situation, while precedents from other jurisdictions involving an assessment of similar facts are not compelling,[2] we must of necessity be guided by our own prior decisions in comparable situations.[3]

In Majerus v. Guelsow, 262 Minn. 1, 113 N. W. (2d) 450, negligence on the part of the defendant was proved by showing that the stairway which decedent had apparently been using had treads of irregular width and risers of irregular height made more hazardous by the absence of a handrail. The principal question in the case was whether a causal relationship between these defects and a fall by decedent, who was found dead 30 feet from the bottom of the stairs, could be sustained, there being no direct evidence as to what happened. In affirming a jury finding of a causal relationship, the court said (262 Minn. 8, 113 N. W. [2d] 455):

"From the facts and circumstances shown here, a jury could reasonably infer that the defect in part of the stairway was the cause of

---

[2] Defendant cites Harwood's Admr. v. Richter, 286 Ky. 162, 150 S. W. (2d) 642; O'Neil v. Noe, 301 Ky. 472, 192 S. W. (2d) 366; Winterson v. Pantel Realty Co. 135 Neb. 472, 282 N. W. 393; Micca v. Parentini, 8 N. J. Misc. 332, 150 A. 223; Wolf v. Kaufmann, 227 App. Div. 281, 237 N. Y. S. 550; Carter v. Carolina Realty Co. 223 N. C. 188, 25 S. E. (2d) 553; Petrey v. Liuzzi, 76 Ohio App. 19, 61 N. E. (2d) 158; Arrington v. Young (Okla.) 366 P. (2d) 400.

[3] Defendant cites Winters v. Minneapolis & St. L. R. Co. 126 Minn. 260, 148 N. W. 106; Bruckman v. Chicago, St. P. M. & O. Ry. Co. 110 Minn. 308, 125 N. W. 263; Lewis v. Chicago G.W.R. Co. 124 Minn. 487, 145 N. W. 393; McNamee v. Hines, 150 Minn. 97, 184 N. W. 675; Alling v. Northwestern Bell Tel. Co. 156 Minn. 60, 194 N. W. 313; Schendel v. Chicago, M. & St. P. Ry. Co. 165 Minn. 223, 206 N. W. 436; Muggenburg v. Fink, 166 Minn. 411, 208 N. W. 134; Nealis v. Chicago, R. I. & P. Ry. Co. 173 Minn. 587, 218 N. W. 125; Phillips v. Chicago, M. St. P. & P. R. Co. 182 Minn. 307, 234 N. W. 307; Smock v. Mankato Elks Club, 203 Minn. 265, 280 N. W. 851; Christensen v. Northern States Power Co. 222 Minn. 474, 25 N. W. (2d) 659; Hanrahan v. Safway Steel Scaffold Co. 233 Minn. 171, 46 N. W. (2d) 243; McDonough v. Newmans Cloak & Suit Co. 247 Minn. 250, 77 N. W. (2d) 59, 61 A. L. R. (2d) 100; Jeske v. George R. Wolff Holding Co. 250 Minn. 16, 83 N. W. (2d) 729; Routh v. Routh, 256 Minn. 203, 97 N. W. (2d) 644; Risnes v. Stonebreaker, 261 Minn. 66, 110 N. W. (2d) 475.

the accident which culminated in decedent's death. It is true that there are other possible inferences, such as, foul play resulting in someone pushing him down the stairs, his falling while intoxicated, an injury received before he returned to the apartment; but none of these creates as reasonable an inference as that reached by the jury. The jury found here, based upon evidence as to the time in which alcohol is metabolized and upon the testimony of those who last saw the decedent, that intoxication was *not* a cause of the death."

The decision in Majerus v. Guelsow, *supra,* is of particular significance because two members of the court dissented upon the grounds that there was nothing in the evidence to establish that defects in the stairway caused the fall and that a finding of causal relationship implicit in the verdict was based on pure speculation and conjecture. It can be assumed, therefore, that the problem was critically examined in the Majerus case and that the decision of the court was finally reached after most careful deliberation.

Here, as in Majerus, the record establishes that the stairway where the decedent fell was hazardous. In Majerus the hazard existed because of the way in which the stairs were constructed, while here it was the inadequacy of the lighting that produced the danger. But it would be difficult to say that causal relationship is more probable in one case than the other on this ground. The basic problem in Majerus, as here, was to decide whether an event which *could* be an adequate cause of an accident was *in fact* the cause of it. We think the probabilities are as great in the one instance as in the other and therefore resolve our doubts in this borderline situation in favor of affirmance.[4]

■ At all relevant stages, defendant has insisted that he was en-

---

[4] See, Paine v. Gamble Stores, Inc. 202 Minn. 462, 279 N. W. 257, 116 A. L. R. 407; Standafer v. First Nat. Bank, 243 Minn. 442, 68 N. W. (2d) 362; Gross v. General Investment Co. 194 Minn. 23, 259 N. W. 557; Mayes v. Byers, 214 Minn. 54, 7 N. W. (2d) 403, 144 A. L. R. 821; Mitton v. Cargill Elev. Co. 124 Minn. 65, 144 N. W. 434; Lindgren v. Voge, 260 Minn. 262, 109 N. W. (2d) 754, 88 A. L. R. (2d) 1080; MacIntosh v. G. N. Ry. Co. 151 Minn. 527, 188 N. W. 551; Outcelt v. Chicago, B. & Q. R. Co. 150 Minn. 398, 185 N. W. 495.

titled to have the issue of assumption of risk submitted to the jury. The reasoning, perhaps oversimplified in summary, is substantially this:

(1) Decedent knew before proceeding to follow her guests down the stairway that it was dark and therefore hazardous.

(2) Although decedent did not have the choice to avoid this hazard by following a different route to the first floor, she did have the option of remaining on the second floor where she was, in which event she would have avoided the dangerous condition said to have caused her injury.

(3) The election to proceed was a voluntary choice to chance the known and appreciated risk of harm and was, therefore, assumption of risk within the meaning of that concept as defined in the cases and by the authorities.

To refuse to submit the issue of assumption of risk to the jury in such a situation, it is argued, is to eliminate the defense in a tort action to the great prejudice of parties who are entitled to avail themselves of it. It must be conceded that there are decisions of this court, particularly some involving spectators at athletic events,[5] and decisions from courts of other jurisdictions [6] giving persuasive support to defendant's position.

The difficulty is due in part to the fact that the defenses of contributory negligence and assumption of risk in a case such as the present one tend to overlap.[7]

---

[5] See, Brisson v. Minneapolis Baseball & Athletic Assn. 185 Minn. 507, 240 N. W. 903; Modec v. City of Eveleth, 224 Minn. 556, 29 N. W. (2d) 453; White v. Cochrane, 189 Minn. 300, 249 N. W. 328; Aldes v. St. Paul Ball Club, 251 Minn. 440, 88 N. W. (2d) 94.

[6] See, Streeton v. Roehm, 83 Ohio App. 148, 81 N. E. (2d) 133; Campbell v. Francis, 53 Tenn. App. 80, 378 S. W. (2d) 790; Spencer v. Curry, 13 App. Div. (2d) 969, 216 N. Y. S. (2d) 860.

[7] See, Hubenette v. Ostby, 213 Minn. 349, 6 N. W. (2d) 637; Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213; Grabow v. Hanson, 226 Minn. 265, 32 N. W. (2d) 593; Schrader v. Kriesel, 232 Minn. 238, 45 N. W. (2d) 395; Standafer v. First Nat. Bank, 243 Minn. 442, 68 N. W. (2d) 362; Schneider v. The Texas Co. 244 Minn. 131, 69 N. W. (2d) 329; Hanson v.

The law imposes a duty on every person to exercise reasonable care for his own safety and if he fails to do so he is said to be contributorily negligent. The questions for the jury's determination in assessing the conduct of the injured person are what a reasonably prudent person would have anticipated under the same or similar circumstances and, so anticipating, how such a reasonably prudent person would have acted in the particular situation. If the injured party fails to conform to this standard, contributory negligence is established. As applied to this case, the question was: Having been a resident in the apartment building for 7 years; having knowledge of the condition of the stairway which must be attributed to her by reason of that circumstance and a comment attributed to her (before she commenced walking down the stairway decedent said that it was dark and therefore hazardous), did decedent exercise reasonable care in undertaking to accompany her guest to the apartment entrance?

The jury was specifically instructed on the elements of contributory negligence, and implicit in its verdict is a finding that decedent was in the exercise of reasonable care for her own safety at the time and place of the accident.

What could an instruction with respect to assumption of risk have added as a decision-making factor in this case? The answer must be that under the doctrine of assumption of risk decedent is barred from recovery if she deliberately encounters a known and appreciated hazard which causes injury regardless of whether a reasonably prudent person would have followed the same course of action as that in which she was engaged at the time of the accident.

So considered, it is understandable that the spectrum of assumption of risk as a defense not encompassed by contributory negligence is, and in cases of this type should be, a narrow one.

In an action against an apartment owner for death resulting from injuries sustained by a tenant while using the stairway provided and necessary for access to and egress from the leased premises, should

Bailey, 249 Minn. 495, 83 N. W. (2d) 252; Erickson v. Quarstad, 270 Minn. 42, 132 N. W. (2d) 814.

recovery be barred notwithstanding the fact that the injured person was using due care for her own safety simply because the tenant knew, generally, that the stairway was less well lighted than it should have been? We find no Minnesota case which dictates this result. On the contrary, we have held frequently in comparable situations that the existence of an alternate and safer route must be demonstrated before the doctrine applies.[8] Less than a decade ago, in Donald v. Moses, 254 Minn. 186, 192, 94 N. W. (2d) 255, 260, a street accident case, it was held error to submit the defense of assumption of risk to the jury because:

"It is clear that the trial court after most carefully considering the issues has reached the conclusion that it erred in submitting the affirmative defense of assumption of risk, rather than that of contributory negligence, due to having overlooked certain prerequisites for the application of the defense of assumption of risk which are that the assumption must be free and voluntary; *that the risk is not assumed where the conduct of the defendant has left the plaintiff no reasonable alternative;* and that, if a plaintiff with full knowledge of the dangerous condition of a sidewalk, because of icy conditions, voluntarily attempts to walk on it, he is not deemed to assume the risk of injury *unless the defendant proves the reasonable availability of a safer route of travel.*" (Italics supplied.)

The result must be the same here, we believe, because there was no evidence to indicate the availability of a safer route than the one selected.

■ The trial judge charged:

"* * * If you find that plaintiff is entitled to recover, you must then

---

[8] In Donald v. Moses, 254 Minn. 186, 193, 94 N. W. (2d) 255, 260, Mr. Justice Nelson quotes with approval Prosser, Torts (2 ed.) § 55, p. 312, where it is stated: "[A] tenant does not assume the risk of the landlord's negligence in maintaining a passageway when it is the only exit to the street * * *." See, also Campion v. City of Rochester, 202 Minn. 136, 277 N. W. 422; Slindee v. City of St. Paul, 219 Minn. 428, 18 N. W. (2d) 128; Strong v. Shefveland, 249 Minn. 59, 81 N. W. (2d) 247; Cogswell v. U. S. S. Yorktown Post 178, 274 Minn. 154, 143 N. W. (2d) 45.

fix the amount of money, not to exceed $35,000, which will fairly compensate him for his pecuniary loss resulting from the death of his wife."

Since the accident and death occurred when the recovery limit in an action for wrongful death was $25,000, we believe the authorities cited by defendant[9] support his claim that the higher ceiling in effect when the action was tried did not apply.

We note this explanation of the situation as given by the trial judge in his memorandum:

"* * * At a short pre-trial conference prior to the impaneling of the jury, the question of death limit arose. * * * [I]t was stipulated by the parties, through their respective attorneys, that there would be no mention of death limit to the jury at any time during the trial, final arguments, or instructions. It was further agreed that, should the jury return a verdict of more than $25,000.00, Defendant might make a post-trial motion to reduce the verdict."

For reasons not now relevant this agreement by counsel was rescinded. It was in an effort to solve the dilemma thus created that the court proceeded to instruct the jury that the recovery could not exceed the sum of $35,000, it being understood by the court and counsel that should the verdict exceed $25,000, defendant could make an appropriate post-trial motion for reduction. We agree with this statement by the trial judge:

"The general verdict returned was in the sum of $17,000.00 (including about $7,000.00 in special damages). I am satisfied that no prejudice of substance resulted from the Court's instruction on the death limit."

■ We do not feel that prejudicial error was committed when the

---

[9] See, Zontelli Brothers v. N. P. Ry. Co. (8 Cir.) 263 F. (2d) 194; Field v. Witt Tire Co. (2 Cir.) 200 F. (2d) 74; Herrick v. Sayler (7 Cir.) 245 F. (2d) 171; Conn v. Young (2 Cir.) 267 F. (2d) 725; Theodosis v. Keeshin Motor Exp. Co. 341 Ill. App. 8, 92 N. E. (2d) 794; Keeley v. G. N. Ry. Co. 139 Wis. 448, 121 N. W. 167. Minn. St. 645.21 and 645.31 bespeak a general legislative intent that statutes operate prospectively.

trial judge received the testimony of an expert witness as to the reasonable worth and value of household services of the kind performed by decedent before the accident. While this witness was not identified at a pretrial conference where the parties were requested to disclose the names of those who would appear to testify in the case, the trial judge was acting within the range of his discretion in permitting the witness to be called where plaintiff announced his intention to do so before the trial commenced and defendant could show no substantial prejudice as a result.[10] Although the witness in question had no experience specifically related to the type of a home maintained by this decedent for her husband, her experience generally gave adequate basis for the opinion she expressed to the effect that the services in question had a market value of approximately $25 to $50 a week.[11] If the expression of such an opinion encroaches to some degree upon the province of jurors, it can scarcely be said that the opinion as expressed resulted in an inflation of the amount which otherwise would have been returnable on account of the loss sustained. Defendant had ample opportunity to produce rebuttal testimony if he considered this opinion damaging. He did not do so.

■ In our opinion there was no prejudicial error when the trial judge declined to admit evidence as to light measurements in a hallway near the courtroom even though one witness referred to the area as being comparable to the accident site in respect to darkness. See, Erickson v. Northern Minn. Nat. Bank, 235 Minn. 232, 50 N. W. (2d) 489.

Affirmed.

---

[10] Cf. Sanchez v. Waldrup, 271 Minn. 419, 136 N. W. (2d) 61; Lundin v. Stratmoen, 250 Minn. 555, 85 N. W. (2d) 828.

[11] See, In re Estate of Anderson, 184 Minn. 648, 239 N. W. 602.